865 F.2d 791
 130 L.R.R.M. (BNA) 2388, 57 USLW 2428,
110 Lab.Cas. P 10,905
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW)
and its Local 449, Petitioners, Cross-Respondents,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.
 Nos. 87-5764, 87-5809.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 25, 1988.
Decided Jan. 19, 1989.
Rehearing and Rehearing En Banc Denied March 10, 1989.
 
 Michael B. Nicholson (argued), Detroit, Mich., for petitioners, cross-respondents.
 Aileen Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Dennis Walsh (argued), Barbara A. Atkin, Glen A. Zipp, Director, Region 33, N.L.R.B., Peoria, Ill., for respondent, cross-petitioner.
 Before RYAN and NORRIS, Circuit Judges, LIVELY, Senior Circuit Judge.*
 LIVELY, Senior Circuit Judge.
 
 
 1
 The question for decision is whether a union's restrictions on its members' right to resign their union membership violate section 8(b)(1)(A) of the National Labor Relations Act, as amended, 29 U.S.C. Sec. 158(b)(1)(A).[1] The only enforcement provision available to the union for a member's unauthorized attempt to resign was suspension or expulsion from the union. The union could not levy a fine or impose other disciplinary sanctions except suspension or expulsion from membership. The National Labor Relations Board (the Board), agreeing with the administrative law judge (ALJ) who conducted unfair labor practice proceedings, concluded that the union violated the Act by maintaining invalid restrictions on resignation from union membership in its international constitution. The union petitioned this court for review, and the Board filed a cross-application for enforcement of its decision and order.
 
 I.
 A.
 
 2
 While a collective bargaining agreement was in force between Keystone Consolidated Industries, Inc. and the United Auto Workers International and its Local 449, the parties reached an impasse in negotiating a new agreement. When the last agreement expired, the members of the local voted to strike and the international union approved. During the strike forty-one employees submitted resignations from membership to the local. These resignations also constituted resignations from the international union. The employees then returned to work.
 
 
 3
 Thereafter, several individual union members filed internal union charges against the forty-one employees, alleging that the employees engaged in conduct unbecoming union members. The executive board of the local reviewed the charges and found them "not to be improper" under the international union's constitution. The forty-one members were notified of this finding by individual letters, but neither the local nor the international union took any further steps to process the charges or impose sanctions on the resigning members. The letters stated that the executive board had approved the charges, and advised that the charges would be "administered" as provided by the international constitution. The letters also stated:The charges are resigning from Local 449 UAW improperly under Article 6 of the UAW International Constitution and crossing the picket line to perform work while a strike against the employer ... is in progress.
 
 
 4
 The provision of Article 6 referred to in the letter is Section 17, which states:
 
 
 5
 A member may resign or terminate membership only if s/he is in good standing, is not in arrears or delinquent in the payment of any dues or other financial obligation to the International Union or to her/his Local Union and there are no charges filed and pending against her/him. Such resignation or termination shall be effective only if by written communication, signed by the member and sent by registered or certified mail, return receipt requested, to the Financial Secretary of the Local Union within the ten (10) day period prior to the end of the fiscal year of the Local Union as fixed by this Constitution, whereupon it shall become effective sixty (60) days after the end of such fiscal year; provided, that if the employer of such member has been authorized by such member individually or by the Collective Bargaining Agreement by the employer or the Union to checkoff the membership dues of such members, then such resignation shall be become effective upon the effective termination of such authorization, or upon the expiration of sixty (60) days period, whichever is later.
 
 B.
 
 6
 The employer filed unfair labor practice charges against both the international and the local (hereafter UAW or the union), and the regional director of the NLRB issued a consolidated complaint. The ALJ conducted a four-day hearing and admitted numerous documents as exhibits before adjourning the hearing. He then filed a decision and recommended order.
 
 
 7
 The ALJ held that "refusal to honor a resignation tendered, without more, violates the Act." In finding that the local had received all the resignations even though some of them were sent by regular mail or were hand delivered, the ALJ stated, "the requirements of registry and/or certification and return receipt for written resignations are themselves restrictions on resignation that accomplish nothing but to make the process of resignation more difficult." On the basis of the hearing record the ALJ further found that the union "failed and refused to honor the resignations submitted by the employees ... and by so doing violated Section 8(b)(1)(A) of the Act."
 
 
 8
 Concluding that both the maintenance of the restrictions in the union constitution and the union's refusal to accept the employees' effective resignations from membership violated the Act, the ALJ recommended entry of a cease and desist order and an order that the union expunge Article 6, Section 17 in its entirety from its international constitution. Overruling exceptions filed by the union, the Board adopted the decision and recommended order of the ALJ, with modifications not pertinent to this appeal.
 
 II.
 
 9
 The union makes three arguments in support of its position: (1) the restrictions on resignation from membership relate to the conduct of internal union affairs, and therefore are not unlawful under Sec. (8)(b)(1)(A); (2) the common law of association validates the restrictions as properly negotiated provisions of a bilateral contract between the union and its members; and (3) even if the provision restricting the time during which a resignation may be submitted violates the Act, the Board erred in holding Article 6, Section 17 invalid in its entirety.
 
 
 10
 The Board responds by acknowledging that Sec. 8(b)(1)(A) does not authorize interference with a union's conduct of its internal affairs. It maintains, however, that the Supreme Court has held that a union's restrictions on its members' right to resign restrain or coerce employees in the exercise of a right at the very heart of "voluntary unionism," and therefore impair a fundamental labor policy. The Board argues, further, that the UAW's inability to enforce its restrictive provisions by levying fines is immaterial; the union violated Sec. 8(b)(1)(A) when it refused to accept the members' resignations. The Board responds to the "common law of association" argument by citing decisions that have rejected a purely contractual approach to labor agreements. Finally, the Board asserts that it followed authoritative precedent by holding that the presence of any restriction on resignations constitutes a violation, thus rendering all of the restrictive provisions of Article 6, Section 17 invalid. In addition, the Board states that it explained its reasoning sufficiently when it adopted the ALJ's rationale for finding the entire section unlawful.
 
 III.
 
 11
 The Board relies principally on one of its decisions, later cited with apparent approval by the Supreme Court, to support its position. In International Association of Machinists & Aerospace Workers, Local Lodge 1414 (Neufeld Porsche-Audi), 270 NLRB 1330 (1984), the Board concluded that any restriction a union may impose on resignation is invalid under Sec. 8(b)(1)(A). Id. at 1333. The provision of the union's constitution at issue in Neufeld prohibited members from resigning during strikes. The union fined a member who had submitted a resignation and returned to work during a strike.
 
 
 12
 In determining that the union violated the Act, the Board stated that it was following a number of Supreme Court decisions, particularly Scofield v. N.L.R.B., 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969). Scofield discussed and refined the distinction between union rules that affect only the internal operations of a union and those that affect its external operations, a distinction which the Court had previously drawn in N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). The charge against the union in Scofield complained of fines and suspensions from membership imposed as discipline against members who exceeded an agreed production ceiling. In holding that the union had not violated Sec. 8(b)(1)(A), the Court stated that Congress, in enacting Sec. 8(b)(1)(A), did not seek to regulate internal union affairs except for "barring enforcement of a union's internal regulations to affect a member's employment status." Scofield, 394 U.S. at 428, 89 S.Ct. at 1157 (quoting Allis-Chalmers, 388 U.S. at 195, 87 S.Ct. at 2014). While provisions for fines or expulsion for violating internal union rules are generally enforceable, "if the rule invades or frustrates an overriding policy of the labor laws the rule may not be enforced, even by fine or expulsion, without violating Sec. 8(b)(1)." Scofield, 394 U.S. at 429, 89 S.Ct. at 1157. In summary the Court stated that
 
 
 13
 Sec. 8(b)(1) leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule.
 
 
 14
 Id. at 430, 89 S.Ct. at 1158.
 
 
 15
 Applying Scofield, the Board found a violation of Sec. 8(b)(1)(A) in Neufeld for a number of reasons. First, it concluded that union restrictions on members' right to resign impair the fundamental labor policy expressed in Sec. 7 of the Act, 29 U.S.C. Sec. 157, which "expressly grants employees 'the right to refrain from any or all' protected concerted activities." 270 NLRB at 1333. Second, the Board determined that such restrictions impair the fundamental labor policy of "voluntary unionism" expressed in the Act. Id. Third, the Board found that the restrictions "artificially expand [ ]" the distinction between internal and external enforcement of union rules "[b]y unilaterally extending an employee's membership obligation." Id. In addition the Board found that the union's enforcement of its rule against the Neufeld employees was contrary to the Scofield limitation that a union may enforce a rule only against members who are "free to leave the union and escape the rule." Id. at 1334 (quoting Scofield, 394 U.S. at 430, 89 S.Ct. at 1158).
 
 
 16
 In Pattern Makers' League v. N.L.R.B., 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985), the Supreme Court considered a union constitution that prohibited resignations during a strike or when a strike is imminent. The union fined ten employees who resigned and returned to work during a strike. The Board held that the fines were imposed in violation of Sec. 8(b)(1)(A), and the Seventh Circuit enforced the order. 724 F.2d 57 (1983). The Supreme Court granted certiorari "to decide whether Sec. 8(b)(1)(A) reasonably may be construed by the Board as prohibiting a union from fining members who have tendered resignations invalid under the union constitution." Id. 473 U.S. at 96-97, 105 S.Ct. at 3065-66. After discussing the court of appeals decision, the Court restated its reason for granting review, declaring it was "to resolve the conflict between the Courts of Appeals over the validity of restrictions on union members' right to resign." Id. at 100, 105 S.Ct. at 3067. The imposition of fines was not mentioned.
 
 
 17
 The Court then acknowledged the deference due the Board's interpretation of the Act in view of its " 'special competence' in the field of labor regulations" and concluded that the narrow issue on review was "whether the Board's construction of Sec. 8(b)(1)(A) is reasonable." Id. The Court noted the Board's treatment of Sec. 8(b)(1)(A) in Neufeld, particularly the Board's conclusion that union restrictions on the right to resign conflict with the policy of voluntary unionism. Immediately following a citation to Neufeld the Court stated: "We believe that the inconsistency between union restrictions on the right to resign and the policy of voluntary unionism supports the Board's conclusion that [the Pattern Makers' restriction] is invalid." Id. at 105, 105 S.Ct. at 3070.
 
 
 18
 The union urges us to interpret Pattern Makers' narrowly. It argues that the union's action in that case violated Sec. 8(b)(1)(A), not because the union maintained a constitutional restriction on the right to resign, but because it levied heavy fines against the members who attempted to resign. By imposing these fines, the union contends, the Pattern Makers' union went beyond the regulation of internal union affairs and affected the employment relationship. Article 6, Section 17, on the other hand, does nothing more than promote solidarity, a legitimate union objective. Without the imposition of fines, the union maintains, the constitutional restrictions do not vitiate "the strictly internal character of the union rules." The union argues that, as in Pattern Makers', the issue of union-imposed fines was also central to the Board's decision in Neufeld.
 
 IV.
 A.
 
 19
 The Supreme Court divided five to four in Pattern Makers', with three of the dissenting justices finding no support for the majority's decision "in either the language of Secs. 7 and 8(b)(1)(A) of the National Labor Relations Act on which the Court purports to rely, or in the general goals of the Act, which it ignores." 473 U.S. at 117-18, 105 S.Ct. at 3076-77 (Blackmun, J., dissenting). In addition to joining in Justice Powell's majority opinion, Justice White filed a separate concurring opinion. He discussed the "proviso" in Sec. 8(b)(1)(A) ("Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein"), and concluded that it could be read either of two ways. It could be read as permitting restrictions on resignations during a strike as rules related to the "retention" of membership. On the other hand, it could "be sensibly read to refer only to the union's right to determine who shall be allowed to join and to remain in the union." Id. at 116, 105 S.Ct. at 3076 (White, J., concurring). Applying the rule of deference, Justice White accepted the Board's adoption of the second interpretation. "Where the statutory language is rationally susceptible to contrary readings, and the search for congressional intent is unenlightening, deference to the Board is not only appropriate, but necessary." Id. at 117, 105 S.Ct. at 3076.
 
 
 20
 In N.L.R.B. v. International Brotherhood of Electrical Workers, Local 340, 481 U.S. 573, 107 S.Ct. 2002, 95 L.Ed.2d 557 (1987), the Court examined the application of Sec. 8(b)(1)(A) to a union's disciplining of members for continuing to work for employers who did not have collective bargaining agreements with the union. In determining that the union had not violated the Act by imposing fines, the Court stated that Pattern Makers' had decided "that union members have a right to resign from a union at any time and avoid imposition of union discipline." 107 S.Ct. at 2015 (emphasis in original).
 
 B.
 
 21
 This court has had no occasion to apply Pattern Makers' to a union restriction on members' right to resign. We have relied on Pattern Makers' as establishing the high degree of deference due the Board's interpretation of the Act. Vokas Provision Co. v. N.L.R.B., 796 F.2d 864, 868 (6th Cir.1986); N.L.R.B. v. United States Postal Service, 833 F.2d 1195, 1197 (6th Cir.1987). In Postal Service we described Pattern Makers' as holding that "a union could not use monetary fines to burden a member's right to resign." Id. at 1201. This statement does not require us to accept the union's argument that Pattern Makers' must be given a narrow reading that confines its application to cases where a fine has been imposed for attempting to resign in contravention of union rules.
 
 
 22
 The quoted statement in Postal Service is dicta. Before making this statement, the court had already declined to base its decision on Pattern Makers' because the Board had not relied on that decision or its reasoning. In an "even if" comment the court noted the inapplicability of Pattern Makers' to the case it was deciding. Unlike the union members in Pattern Makers', members of the postal workers' union were free to leave the union at any time. The absence of fines for violation of a union rule distinguished Postal Service from Pattern Makers'. The more critical distinction, however, was that the policy of voluntary unionism--"the underlying rationale of the decision [in Pattern Makers' ]"--was not violated by the rule under consideration in Postal Service. 833 F.2d at 1201. That rule did not coerce or restrain members in the exercise of their Sec. 7 right to refrain from continued union membership. It should also be noted that the union did not contest that portion of the Board's order in Postal Service finding that the union committed an unfair labor practice by refusing to permit two members to resign. 833 F.2d at 1196 n. 1. Thus, the issue in the present case clearly was not before this court in Postal Service.
 
 
 23
 The Seventh Circuit has applied Pattern Makers' to facts quite similar to those in the present case. The union constitutional provision under scrutiny in N.L.R.B. v. Local 73, Sheet Metal Workers, 840 F.2d 501 (7th Cir.1988), prohibited acceptance of resignations offered in anticipation of charges being preferred against the member, during the pendency of such charges, or during a strike or lockout. The Board found that the union's maintenance of this restriction in its constitution restrained and coerced members in violation of Sec. 8(b)(1)(A). The union made virtually the same arguments in Sheet MetalWorkers that the UAW makes in the present case. It argued that Pattern Makers' should be given a narrow reading, that the Board's interpretation of Sec. 8(b)(1)(A) in Neufeld was unreasonable, and that the restriction was valid under the common law of association.
 
 
 24
 In a careful and well-reasoned opinion Judge Cudahy concluded that the Board's interpretation of the Act was reasonable and that Pattern Makers' provided the rationale for upholding the Board's determination that the restriction on union members' right to resign "restrains and coerces members in violation of section 8(b)(1)(A) and impairs the statutory policy of voluntary unionism." Id. at 508. The court also rejected the union's argument that holding the restriction on resignations invalid was contrary to the common law of association. The court pointed out that Pattern Makers' had rejected a similar argument. Id. See 473 U.S. at 112-14, 105 S.Ct. at 3074-75.
 
 
 25
 We agree with the Seventh Circuit and will affirm the holding of the Board that Article 6, Section 17 violates Sec. 8(b)(1)(A) insofar as it permits resignation only if a member "is in good standing, is not in arrears or delinquent in the payment of dues or other financial obligation and there are no charges filed and pending against her/him." The provision that resignation is effective only if sent by registered or certified mail within ten days prior to the end of the fiscal year of the local union also violates the Act. All of these provisions restrain and coerce the members in the exercise of their right to abstain from union membership and collective activity. As the ALJ stated, these restrictions serve no legitimate purpose; they only make it difficult for a member to exercise the right to withdraw from the union. The Board's findings and conclusions with respect to these features of Article 6, Section 17 are reasonable and entitled to deference. Furthermore, the rationale for these findings and conclusions is sufficiently set forth in the ALJ's decision, which the Board adopted. Thus, we will enforce the order to the extent that it directs the union to expunge the above restrictions from Article 6, Section 17.
 
 
 26
 Neither the ALJ nor the Board discussed the requirement that a member's resignation be in writing and sent to a designated officer of the local union. On its face, we can discern nothing in this requirement that could reasonably be construed as restraining or coercing members in the exercise of their Sec. 7 rights. On the other hand, these requirements serve the legitimate purpose of enabling the union to maintain an accurate membership roll. Therefore, we will not enforce that portion of the order directing the union to expunge these provisions of Article 6, Section 17.
 
 
 27
 The decision of the Board is affirmed, and its order is enforced except to the extent indicated herein.
 
 
 
 *
 The Honorable Pierce Lively became Senior Circuit Judge January 1, 1989
 
 
 [1]
 Section 8(b)(1)(A) provides:
 (b) Unfair labor practices by labor organization
 It shall be an unfair labor practice for a labor organization or its agents--
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein;
 Section 157 referred to above (Sec. 7 of the Act) provides:
 Sec. 157. Right of employees as to organization, collective bargaining, etc.
 Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.