Robin Gansley MITCHELL, et al., Plaintiffs,

v.

LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., Defendants.

No. CV 90–1427 RB(Kx).

United States District Court, C.D. California.

May 31, 1990.

Reed Schaper, Pepper, Hamilton & Scheetz, Los Angeles, for plaintiffs.

Richard N. Fisher, O'Melveny & Myers, Los Angeles, Cal., for Los Angeles Unified School Dist.

Leo Geffner, Taylor, Roth, Bush & Gaeffner, Burbank, Cal., for United Teacher, Los Angeles.

MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS

BONNER, District Judge.

Defendant United Teachers–Los Angeles moves for summary judgment and defendant Los Angeles Unified School District moves to dismiss the complaint. Both motions were heard on May 14, 1990. Having considered the parties' briefs, as well as the arguments of counsel, the Court denies the teachers union's summary judgment motion and denies the school district's motion to dismiss.

## BACKGROUND

This action involves a challenge to the constitutionality of the procedural scheme used by the United Teachers–Los Angeles for determining and collecting agency fees in light of the Supreme Court's ruling in *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) and its progeny.

■ Agency, or fair share, fees are assessed by unions against non-union employees who benefit from the union's bargaining and contract administration. Agency fees cover the non-union employees' pro rata share of the cost of the union's activities as the exclusive representative of bargaining unit employees in dealing with management. To ensure the union may not coerce non-union employees into supporting political or ideological views with which such employees may not agree, the agency fee cannot include provision for funds expended on these activities. Accordingly, such sums for support of ideological causes cannot, consistent with First Amendment principles, be charged to non-union employees.

Plaintiffs are employees of the Los Angeles Unified School District (the "school district"), also named as a defendant in this action. The only other named defendant, besides United Teachers–Los Angeles (the "teachers union"), is Robert Booker, the school district's Chief Business and Financial Officer.

Plaintiffs are not members of the teachers union. They purport to represent a class of all non-union bargaining unit employees.[1] The named plaintiffs and the class they purport to represent are within the collective bargaining unit of the teachers union. Where, as here, the collective bargaining agreement so provides, plaintiffs may be charged that portion of dues attributable to agency fees. The agency fees are collected by the Los Angeles Unified School District by taking deductions from the non-union employees' paychecks

and transferring the deducted funds to the teachers union. The school district is obligated to deduct the agency fees from non-union employees' paychecks pursuant to its collective bargaining agreement with the teachers union.

Plaintiffs bring this class action suit under 42 U.S.C. section 1983. They seek injunctive and declaratory relief, as well as damages. Plaintiffs claim that defendants' procedure for taking agency fees is constitutionally inadequate under *Hudson.* Specifically, plaintiffs contend the union failed to provide financial information verified by an independent auditor regarding the allocation between chargeable and non-chargeable expenditures of the teachers union and its affiliates.[2] They argue that notice and disclosure of such verified financial information is required by *Hudson* before agency fees can be deducted from non-union employees' paychecks.

## STATEMENT OF FACTS

The relevant facts are not in dispute. The teachers union is a certified employee organization, representing bargaining units composed of 34,000 employees of the school district. More than 10,000 of these employees are not members of the union. On September 20, 1989, the teachers union and the school district executed a collective bargaining agreement requiring the school district to "process a mandatory agency fee payroll deduction in the appropriate amount, and forward that amount to [teachers union]." The compulsory agency fee deduction became effective after the California Public Employment Relations Board ("PERB") certified the results of a vote on whether to approve the agency fee agreement. All employees (union and non-union) within the bargaining unit voted on this issue. The agency fee election was held by PERB in November, 1989. The results, by a 2 to 1 majority of the ballots cast—less than 40% of the eligible voters—

---

1. The class has not been certified, nor, as yet, have plaintiffs petitioned to certify the class.

2. The teachers union is affiliated with the California Federation of Teachers/American Federation of Teachers and the California Teachers Association/National Education Association.

were in favor of the compulsory agency fee.

On February 9, 1990, the teachers union mailed its notice of the impending agency fee seizures to non-union bargaining unit employees. The notice consisted of five pages, to which financial information of the teachers union and its affiliates was appended. The notice stated that the "fair share" agency fee was $34.70 per month, representing 84.6% of union dues ($41.00) paid by members of the teachers union. The notice also stated that a "voluntary" desire to pay full union dues would be "presumed" unless the non-member specifically objected.

The teachers union's notice further explained that the agency fee (84.6% of union dues) was calculated based on expenditures made by the teachers union encompassing eighteen distinct types of chargeable activities including, *inter alia*, conducting union elections, preparation for and negotiation of collective bargaining agreements, adjusting grievances, arbitration, membership meetings, operational and administrative expenses, but excluding nine categories of non-chargeable activities, such as political and ideological activity and contributions, members-only benefits, organizing and lobbying.

The teachers union opened an interest-bearing escrow account for deposit of the deducted fees and advised non-members of their right to challenge the union's calculation. The effect of a failure to object resulted in a 100% deduction of full union dues, not just the agency fee. If the non-member challenged the fee, the dispute over the amount of the agency fee is to be resolved by an impartial arbitrator selected by the American Arbitration Association. The notice also urged non-members to join the teachers union.

Approximately 10,000 notices were sent to non-members. About 2,295 non-members joined the teachers union, and 2,152 objected to paying the full union dues or the union's calculation of the agency fee, or both. The remaining 6,000 who did not object were treated as if they were non-union employees who chose to voluntarily contribute an additional 15.4% above the agency fee.[3] On March 27, 1990, the teachers union returned the non-chargeable portion (15.4%) of full dues plus accrued interest to all objecting non-members and escrowed the 84.6% payroll deductions collected by the school district as to the objecting non-members. The teachers union continues to have the school district deduct full union dues taken from non-members who did not file an objection.

## COMPLIANCE WITH HUDSON

■ The Supreme Court has listed three procedural prerequisites to the union's receipt of agency fees. First, the union must give notice and disclose information sufficient to permit non-members to make an informed decision about whether to object to the amount of the agency fee. Second, the union must set up an escrow account to hold the fees paid by non-members who object to the amount of the agency fee. The escrow arrangement ensures that the union will not have access to funds that may eventually be determined to be attributable to expenses for the union's political or ideological activities, in violation of the non-members' First Amendment rights. Third, the union must have in place a system whereby any objections to the amount of the agency fee are adjudicated reasonably expeditiously by an impartial decision-maker. *See Ping v. National Education Association*, 870 F.2d 1369, 1372 (7th Cir. 1989). On this summary judgment ruling, it is the first requirement only that this

---

3. Plaintiffs also challenge the defendants' presumptive seizure of the entire amount of union dues from each non-union employee. Notwithstanding the fact that the notice indicated that the union would take a deduction equal to union dues unless objected to by the non-member, the Court is troubled by this approach, particularly where, as conceded by counsel for the teachers union at oral argument, the union knew it was entitled to no more than 84.6% of union dues from non-members under the collective bargaining agreement. Nonetheless, the Court does not reach the issue whether the school district's taking of the additional 15.4% without the express authorization of non-union employees runs afoul of constitutional prohibitions.

Court addresses in analyzing whether the union's procedural scheme is constitutionally adequate.

## ANALYSIS

A party can move for summary judgment if the pleadings and supporting material "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this action, all parties concede that there are no genuine issues of material fact that would prevent the entry of summary judgment for the party prevailing on the questions of law presented by defendants' motion.

■ Applying the rationale of *Hudson* to the instant case, the Court cannot conclude as a matter of law that the teachers union's financial disclosure is sufficient under *Hudson.* Specifically, the teachers union's unaudited "Summary Schedule of Agency Fee Chargeable and Non–Chargeable Expenditures" is defective in that it does not meet *Hudson's* requirement that "financial disclosure to non-union members include the major categories of expenses and verification by an independent auditor." *Hudson,* 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18.

The Court is not persuaded by defendants' argument that the breakdown of chargeable and non-chargeable expenses need not be verified by an independent auditor. The teachers union's financial data, attached to its notice, is contained in a one-page schedule entitled, "Summary Schedule of Agency Fee Chargeable and Non–Chargeable Expenditures." (Complt., Exhibit "D2", p. 43.) This schedule, however, is nothing more than an estimate by the teachers union's management regarding the allocation of chargeable and non-chargeable expenditures of the teachers' union for the fiscal year ending August 31, 1989.[4] Financial figures for 12 expense categories labeled, *e.g.,* "Employee-regular," "Governance," "Conventions", "Program," etc., are supplied in three columns: (1) Non-chargeable; (2) Chargeable; and (3) Total Expenditures.

The teachers union's schedule is attached to a cover letter of an independent auditor, Thomas K. Knox, C.P.A., dated January 18, 1990. Yet, the auditor expressly states: "The allocation of expenses [in the schedule] ... was made by [the teachers union] and was based on their estimates." (Exhibit "D2" at 42). In sum, the independent auditor did not verify the breakdown between chargeable and non-chargeable expenses.[5] Therefore, the Court finds that teachers union's disclosure of financial information fails to comply with the minimum disclosure requirements mandated by *Hudson.*

The Supreme Court did not warrant that an independent audit of only total expenditures[6] would safeguard against the risk that agency fees would be used to subsidize activities for which non-members may not be charged. Indeed, mere verification of total expenditures by category would be meaningless, inasmuch as it plays no role in the computation of the agency fee. The critical data is the ratio between chargeable vs. non-chargeable expenses, because it is this ratio that is used to compute the percentage of union dues properly assessed as an agency fee. Thus, the Court concludes that the independent verification re-

---

4. On this summary judgment motion, the Court expresses no opinion as to whether any of the affiliate union agency fee reports meet the *Hudson* requirements regarding the degree of verification applied to their respective major categories of expenses.

5. For this reason, the Court concludes that the statement in the union's notice, to wit: "the fair share [agency] fee was reached based on audited financial information that is attached to this notice", is misleading. The agency fee calculation was not based on any audited data of the teachers union. There was none upon which to make the percentage allocation necessary to compute the agency fee.

6. The auditor's letter accompanying the teachers union's schedule is so obscurely worded that it cannot be fairly read to verify even the accuracy of the total expenditures for the 12 categories of expenses set forth in the schedule. Nowhere does the auditor say that the totals of the chargeable and non-chargeable expenditures (the third column of the schedule) are extracted from his audited financial statement or are otherwise accurate.

quirement must apply to the allocation of chargeable and non-chargeable expenditures in a union's major expense categories. The teachers union's disclosure fails because, with respect to the data most critical to a non-member's decision whether to contest the computation of the agency fee, an auditor-verified breakdown between chargeable and non-chargeable costs is lacking. The reasoning set forth in *Hohe v. Casey*, 727 F.Supp 163, 167 (M.D.Pa. 1989) on this point is persuasive.

> The whole point of providing the notice of nonmembers was to give them enough information to decide whether to challenge the fair share fee. That would require a breakdown between chargeable and nonchargeable costs. The Supreme Court has said that the necessary disclosure must include verification by an independent auditor. Hence, it must have meant verification of the breakdown. Verification of the basic financial statements ... would not provide any reassurance concerning the allocation of costs and enable a nonmember to decide whether to contest the fee or not.

To narrowly construe *Hudson*'s requirement of verification by an independent auditor as no more than a verification of an unallocated expenditure would emasculate the remedial effect envisioned by the Supreme Court, "leaving the non-union employees in the dark about the source of the figure for the agency fee" and defeating the objective underlying *Hudson*'s prescription.

Under *Hudson,* a union must adequately explain the basis for its agency fee computation and, part and parcel of that dictate is that "adequate" financial disclosure be made to non-union employees reflecting allocations of expenditures be verified by an independent auditor. *See Gwirtz v. Ohio Education Association,* 887 F.2d 678, 681 (6th Cir.1989). The Court cannot find the teachers union's disclosure "adequate", be-

cause it failed to subject its breakdown between chargeable and non-chargeable expenditures to verification by an independent auditor.[7]

Despite the union's protestations to the contrary, this approach is consistent with *Hudson*'s qualification that "absolute precision" in the calculation of the charge to non-members is not required. *Hudson,* 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. However, and without reaching the plaintiffs' argument that a so-called SAS 62 audit is required, the Court determines that, at a minimum, *Hudson*'s standards are not satisfied when the auditor's report specifically disclaims any opinion on the allocation of expenses between chargeable and non-chargeable categories, but merely appends schedules of allocations based solely on the union's own estimates.

The Ninth Circuit has not addressed this precise issue. However, cases in other circuits, which have held a union's financial disclosure adequate, do not support the teachers union's disclosure in the instant case. For instance, the teachers union's reliance upon *Gwirtz,* 887 F.2d 678 (6th Cir.1989), is misplaced. Unlike the financial disclosure contested here, an independent auditor in *Gwirtz,* consistent with the Court's ruling today, had audited the union's breakdown between chargeable and non-chargeable expenses. *Id.,* 887 F.2d at 679.

Similarly distinguishable is the Seventh Circuit's decision in *Ping, supra. Ping*'s precise holding rejected plaintiff's argument that *Hudson* required auditors to make a legal determination on the nature of the expenditures, and based on that determination, to certify whether the expenses fell into one of three categories: clearly chargeable expenses, clearly non-chargeable expenses, and reasonably disputable expenses. *Ping,* 870 F.2d at 1374. No such requirement has been enunciated in the instant case.

---

7. An auditor is not required to make any legal determinations regarding a union's allocation between chargeable and non-chargeable expenses. All the auditor need do is verify that the expenditures made by the union were indeed actually made and verify that they have been allocated in accordance with certain disclosed criteria. Allocation of expenses in accordance with stated criteria is not unfamiliar to outside auditors. It is a routine part of their professional services.

The only appellate court case that directly supports the teachers union's position is *Andrews v. Education Association of Cheshire*, 829 F.2d 335 (2nd Cir.1987). In *Andrews*, the Second Circuit held that *Hudson* did not require the union to have an auditor verify its allocation between major chargeable and non-chargeable expense categories, because this would require an auditor to make "a legal, not an accounting decision...." *Andrews*, 829 F.2d at 340.

As previously noted, however, the verification by an auditor of major expenditures falling into either chargeable or non-chargeable categories, based upon stated criteria, is an undertaking regularly performed by outside accountants. It is union's management that must provide the auditor with the criteria regarding which activities, for which expenses have been incurred, are chargeable and which are not. This independent verification does not require an auditor to make "legal" determinations.

Furthermore, if *Hudson*'s requirement of auditor-verification is to be at all meaningful to non-members, it is only by verification of the chargeable/non-chargeable allocation. It is this allocation, not the total expenditures for major expense categories, that is utilized to compute the *pro rata* percentage of union dues properly assessable as an agency fee against non-members. Indeed, the total expenditures of the union have absolutely no meaning in the abstract. Because the verification by an independent auditor does not require a legal determination by an auditor and, more important, because it is the only type of verification that is meaningful to the agency fee computation, the Court declines to follow *Andrews*.[8]

## SCHOOL DISTRICT'S MOTION TO DISMISS

■ Defendant Los Angeles Unified School District and Robert Booker's motion

to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is also denied.

Under *Hudson*, a public employer, as well as the public employees union, has a responsibility to see to it that adequate procedures are provided which minimize the impingement of the non-members' constitutional rights. Courts have consistently rejected arguments, urged by the school district, that the duty to implement the necessary notice and procedures falls entirely on the union,—that if the public employer merely passively complies, it is immune from section 1983 liability. Indeed, it is the public employer's involvement in the agreement authorizing the seizure of the agency fees that gives rise to a claim by plaintiffs for deprivation of federally secured constitutional rights. And the public employer is the one that deducts the fee from its employees' paychecks. In short, dispense with the public employer and there would be no cause of action.

> The court rejects the City's argument that it itself has no duty to ensure or establish the constitutionally adequate procedure described by *Hudson* ... The logic of *Hudson* itself contradicts this argument. Action under color of state law is a necessary element of a section 1983 claim. The administration of an agency shop by a public employer constitutes such state action, the Court in *Hudson* implicitly acknowledged, when it upheld the plaintiff's section 1983 claim against the Union and school board there. After all, without such state action, plaintiffs might be precluded from challenging fair share questions ...

*Dixon v. City of Chicago*, 669 F.Supp 851, 852 (N.D.Ill.1987).

## CONCLUSION

For the foregoing reasons, the United Teachers–Los Angeles' motion for summary judgment is denied. Likewise, the Los

---

8. As previously noted, the teachers union not only failed to have an auditor verify its schedule allocating expenditures between the chargeable and non-chargeable columns, its auditor did not even, at the minimum, verify that the cumula-

tive expenditures were accurate. As pointed out by the district court in *Andrews*, there was verification of total expenditures in that case. *See Andrews v. Education Assn. of Cheshire*, 653 F.Supp. 1373, 1377 (D.Conn.1987).

Angeles Unified School District's motion to dismiss the complaint is denied.

IT IS SO ORDERED.