**Robin Gansley MITCHELL, et al., Plaintiffs,**

v.

**LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., Defendants.**

**No. 90–1427–RB(Kx).**

United States District Court, C.D. California.

Aug. 6, 1990.

Reed Schaper, Pepper, Hamilton & Scheete, Los Angeles, Cal., for plaintiffs.

Richard N. Fisher, O'Melveny & Myers, Los Angeles, Cal., for L.A. Unified School Dist.

Leo Geffner, Taylor Roth Bush & Geffner, Burbank, Cal., for United Teachers–LAUSD.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION, SUMMARY JUDGMENT AND ENTRY OF PERMANENT INJUNCTION

BONNER, District Judge.

### I. Background

By memorandum of decision and order filed May 31, 1990, this Court held that the accounting information provided by defendant United Teachers–Los Angeles ("UTLA") in its agency fee notice was constitutionally deficient owing to the failure of an independent audit verification of expenditures, as mandated by *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).[1]

On July 16, 1990, a hearing was held regarding two motions brought on by plaintiffs: (1) for class certification and (2) for summary judgment against the defendants in the form of injunctive and restitutionary relief. The facts underlying this action are set forth in greater detail in the Court's May 31, 1990 ruling. *See Mitchell v. LAUSD*, 739 F.Supp. 511 (C.D.Cal.1990). Consistent with the reasoning of my earlier decision, and for purposes of resolving the matters under submission, the Court today reaffirms its ruling that the UTLA failed to comply with the disclosure requirements regarding its allocation between chargeable and non-chargeable expenditures.

... the Court concludes that the independent verification requirement must apply to the allocation of chargeable and non-chargeable expenditures in a union's major categories. The teachers union's disclosure fails because, with respect to the data most critical to a non-member's decision whether to contest the computation of the agency fee, an auditor-verified breakdown between chargeable and non-chargeable costs is lacking. [adopting the rationale set forth in *Hohe v. Casey*, 727 F.Supp. 163, 167 (M.D.Pa.1989)].

*Mitchell*, 739 at 512.

Accordingly, the plaintiffs are entitled to judgment on the issue of liability. The remaining issues for adjudication involve class certification and the appropriate relief available to the plaintiffs.

### II. Discussion

#### 1. *Class Action Certification.*

■ Before turning to the nature of relief, the Court decides that this action should be certified as a class action pursuant to Fed.R.Civ.P. 23(a), (b)(1)(A) and (b)(2), because of the large number of non-union employees affected by the substantive disposition of this lawsuit and because the same questions of law and fact are common to all non-union members who received the UTLA's defective *Hudson* notice in connection with the agency fee deduction from their paychecks.[2]

Plaintiffs have established that the proposed class satisfies the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a). The class size, more than 8,000 non-union members who are subject to the defendants' agency fee arrangement, makes joinder of all persons impracticable. In addition, the representative plaintiffs have shown that

---

**1.** In *Hudson,* the Supreme Court considered the constitutionality of procedures "to draw that necessary line" between contract bargaining and administration costs which are properly charged to nonmembers and sums for the support of ideological causes which are not, and to respond to nonmembers' objections to the manner in which it was drawn.

**2.** Agency, or fair share, fees are the fees paid by non-union employees to the union to defray the employees' pro rata share of the costs of the

union's activities as the exclusive representative of the employees in dealing with the employer, in this case the LAUSD. *Hudson* instructs that the union may not coerce non-members into supporting political or ideological views with which they may not agree. Consequently, the agency fee cannot include provision for funds spent by the union to support its political or ideological views. *See, e.g., Ping v. National Education Association*, 870 F.2d 1369, 1370 (7th Cir.1989).

their claims are typical of those of the class because the First Amendment interests of all non-union members were impaired by the defective *Hudson* notice, regardless whether or not they objected to the fee deductions. *See Hohe v. Casey*, 128 F.R.D. 68, 70 (M.D.Pa.1988). Finally, in view of the qualifications and experience of the plaintiffs' attorneys, and because the interests underlying plaintiffs' claims of *Hudson* infringement parallel those of all the other non-union members, the representative plaintiffs can fairly and adequately protect the interests of the class.

Having satisfied the requirements of Rule 23(a), the plaintiffs must meet one of the criteria of Rule 23(b) which provides:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by ... individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or ...
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole ...

In this case, plaintiffs fulfill both requirements because other non-union members would be entitled to institute similar *Hudson* claims against the defendants, and, furthermore, the injunctive relief ordered today applies to all employees of the Los Angeles Unified School District ("LAUSD") represented by the UTLA collective bargaining unit who are not members of the union. Accordingly, this action shall be maintained as a class action by the plaintiffs on behalf of a class comprised of the nineteen named plaintiffs and all other non-union LAUSD employees represented by the UTLA as of February 7, 1990, excepting those non-union employees who voluntarily elected to become members of the union after that date.[3]

### 2. *Inadequate Verification of Hudson Notice.*

■ The Court has held that the UTLA's notice mailed to non-union members cannot withstand constitutional scrutiny because the independent audit does not verify the financial information regarding the apportionment of expenditures between chargeable and non-chargeable costs incurred by UTLA. The type of audit required, as the Supreme Court has observed, does not require "'absolute precision' in the calculation of the [agency fee] charge to non-members." *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. However, the non-member is entitled, indeed, is guaranteed, the assurance that an independent auditor has verified the union's cost allocation. As this Court explained in its May 31, 1990 opinion:

> The critical data is the ratio between chargeable vs. non-chargeable expenses, because it is this ratio that is used to compute the percentage of union dues properly assessed as an agency fee ... Under *Hudson*, a union must adequately explain the basis for its agency fee computation and, part and parcel of that dictate is that 'adequate' financial disclosure be made to non-union employees reflecting allocations of expenditures be verified by an independent auditor.

*Mitchell*, 739 F.Supp. at 514–15.

In response to plaintiffs' summary judgment motion, the teachers' union has submitted a revised auditor's letter dated July 3, 1990 of Thomas K. Knox, Certified Pub-

---

**3.** With regard to the 2,295 members who joined the union in response to the notice solicitation, the Court doubts these persons are similarly situated to non-members who have not chosen to join. The plaintiffs' assertion that an employee who became a union member may have been misled in reliance on the audit's failure to verify the breakdown of expenditures is too attenuated to justify inclusion of such employee in the class. There is simply not enough of a nexus between the employee's decision to join the union and the specific *Hudson* deficiency from which to conclude that these recent members may exercise a *Hudson* claim that is typical of those non-members who have refused to belong to the union.

lic Accountant. The union has not, however, submitted a declaration from the auditor regarding whether he performed any further audit or whether he rectified the original audit's *Hudson* deficiencies. Because remedial action depends, in part, on the adequacy of Mr. Knox's revised letter, the Court believes it appropriate to evaluate the auditor's revised letter.

In his revised letter, Mr. Knox states: "In my opinion, the statement of allocation of expenses between chargeable and nonchargeable presents fairly the expenses of the United Teachers–Los Angeles for the year ended August 31, 1989, [based on definitions given in notes and assumptions describing whether an expense is classified as chargeable or nonchargeable]." It is at best ambiguous whether Mr. Knox purports to verify any information more than the UTLA's expenses in toto, as opposed to verifying the union's apportionment of expenses between chargeable and nonchargeable categories. Because the Court is "left in the dark" on this critical point, the revised letter fails, once again, to verify the union's allocation of chargeable vs. non-chargeable expenditures, and, consequently, fails to comply with the disclosure requirements of *Hudson*.

Although urged by the plaintiffs, the Court finds it unnecessary and unwise to hold that the SAS 62 audit is constitutionally required by *Hudson* or that the union engage its auditors to perform the "highest" possible level of audit service regarding financial information provided to payors of agency fees. *See Gwirtz v. Ohio Education Association,* 887 F.2d 678, 680–82 (6th Cir.1989) *cert. denied* —— U.S. ——, 110 S.Ct. 1810, 108 L.Ed.2d 941 (1990). A modified SAS 29 audit would probably suffice, provided that the auditor performs specific additional measures to verify, in accordance with generally accepted accounting principles, the union's allocation of expenses.[4] This further step is essential, because audited financial statements typically do not involve verification for expenditure categories based on the types of activities pertinent to the *Hudson* notice (representational vs. political/ideological).

### 3. Seizure of Agency Fees in the Amount of Full Union Dues.

■ Under the collection procedure established by the UTLA, the LAUSD, as the teachers' employer, is deducting agency fees equal to 100% union dues from all those 6,000 non-union members who did not file an objection,[5] notwithstanding that 15.4% of the deduction represents amounts the union itself calculates it spends on ideological activities and despite the fact that the union is not legally entitled to more than it had computed as the agency fee (84.6% of union dues).

The UTLA's seizure of amounts in excess of an agency fee collides with fundamental tenets governing waiver of constitutional rights. In this regard, the very purpose of *Hudson* is to safeguard the First Amendment interests of non-union employees. It is settled that a non-union member can be forced to share in the expenses incurred by a union in its role as the sole bargaining representative of employees within the bargaining unit. The union's representation of non-members is not costless, and all employees can be compelled to contribute their pro rata share of the costs of representation. Yet, non-union members cannot be forced to pay for expenses related to political and ideological activities unrelated to the costs of representation.

---

**4.** The auditor's verification of the union's allocation of expenses to chargeable and noncharge able categories does not turn on a legal determination regarding the appropriateness of the allocation. Rather, the required verification simply warrants an accounting decision that the expenditures which the union claims it made for certain expenses were actually made for those expenses.

**5.** The notice informed the employee of the option to (1) either remain a non-member, where

upon it explained the union's legal entitlement to the agency fee, or (2) have his paycheck deducted by the amount of the full UTLA dues: "If you do not desire to pay a fair share fee equal to the full UTLA dues, you must send a letter by certified mail to the UTLA office within 30 days of the mailing date of this notice ... If such a notice is not received by UTLA, then we will presume that you have no objections to being charged the full membership dues."

*Hudson,* 475 U.S. at 302, 106 S.Ct. at 1073. To compel non-union members to financially support political or ideological causes with which they might not agree would exact an infringement that the First Amendment does not tolerate.

The standards for waiver of a non-union member's First Amendment rights gainsay any seizures in excess of the agency costs related to collective bargaining, contract administration, and grievance adjustment, that is, sums greater than the union is entitled to receive in the form of mandatory, involuntary contributions from non-union members.[6] Indeed, without restricting the union's ability to exact contributions from non-union members for the pro rata cost of collective bargaining activities, *Hudson* prevents the compulsory subsidization of ideological activity by non-union employees. *Ellis v. Brotherhood of Railway Clerks,* 466 U.S. 435, 447, 104 S.Ct. 1883, 1891, 80 L.Ed.2d 428 (1984).

On those occasions where, as here, plaintiffs' interests derive from the Bill of Rights, the Supreme Court has held that "a 'consent' or 'waiver' of a person's rights" requires a showing of "an intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (in the context of Fourth Amendment rights). As a general prophylactic measure, courts indulge "every reasonable presumption against waiver" and "do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Accordingly, the Court holds that the non-union employees, merely because they did not file an objection, cannot be deemed to have intentionally abandoned a known right or to have consented to an abridgement of their First Amendment interests. In sum, non-union members cannot be deemed by silence to have consented to a deduction from their pay-checks greater than the compulsory agency fee.

In addition, the union's reliance on a "waiver by silence" by non-members who did not affirmatively object to having their paychecks docked in an amount greater than the agency fee gives rise to heightened doubts under the facts of this case, because the union withheld from these non-members "sufficient information to gauge the propriety of the agency fee." *See Lowary v. Lexington Board of Education,* 903 F.2d 422, 429 (6th Cir.1990) (the rule that the non-union member's failure to object to the union's agency fee deduction waives his *Hudson* rights is not applicable because the fee information was insufficient).

Defendants correctly point out that as long as adequate disclosure has been made, courts have allowed unions to collect the agency fee, absent express objection from the non-members. *Mitchell,* 739 F.Supp. at 513 n. 3; *see also Dashiell v. Montgomery County,* 731 F.Supp. 1251 (D.Md.1990). But, defendants also assert that, if the non-member does not affirmatively object, the union is entitled to collect an amount equal to full union dues from the non-member, including the portion of dues representing expenditures for ideological activities. Defendants' assertion misreads precedent on the issue of waiver. Although courts have deemed a non-union member's failure to make his objection known to be a waiver, the waiver extends only to the right to contest the agency fee assessment, a sum that is almost invariably less than the full union dues. The constitutionally limited scope of the waiver by inaction is made clear in *Lowary, supra,* at 430, wherein the Sixth Circuit observed that a dissenting employee "bears the duty of objecting to the *fair share* [agency] fee before relief is granted." [emphasis added].

*Hudson* devised a procedure that would not interfere with the union's ability to

---

6. The problem of UTLA's seizure by presuming consent is analyzed from the perspective of the First Amendment concerns. As the Supreme Court has observed: "[t]he procedures required by the First Amendment also provide the protections necessary for any deprivation of proper-ty." *Hudson,* 475 U.S. at n. 13, 106 S.Ct. at 1074 n. 13. Thus, the Court need not evaluate the seizure of non-agency fee amounts under the due process clause, inasmuch as the protection afforded by the First Amendment is coextensive with that afforded by due process.

require every employee to contribute to the costs of collective-bargaining activities. Nonetheless, failure to affirmatively contest the agency fee cannot be bootstrapped into a presumed waiver of a salary deduction greater than that which the union itself has calculated to be the agency fee.[7] To hold that the union is authorized, absent express consent, to seize an amount to which it concedes it is not entitled casts the union in the role of a "free rider" at the expense of non-union employees.

Finally, defendant's reliance on *Cumero v. PERB*, 49 Cal.3d 575, 262 Cal.Rptr. 46, 778 P.2d 174 (1989), a recent California Supreme Court decision, does not govern disposition in the case at bar.[8] *Cumero* involved a challenge by a non-union member to the amount of the assessed agency (service) fee based on the plaintiff's claim that the agency fee charge was not properly apportioned, that is, it included an assessment for nonrepresentational activities in violation of his First Amendment rights. Although the opinion suggested, in dicta, that the union may make such assessments unless the non-member affirmatively objects, this Court does not read *Cumero* as broadly as the UTLA urges. *Cumero* does not support the union's contention that it can require a mandatory deduction of an amount equal to 100% of union dues, an amount which concededly exceeds the UTLA's agency fee (*i.e.*, proportionate fee for representational activity) by 15.4%, based on a non-member's failure to object.

By the UTLA's own calculations, any dollar assessment above 84.6% of union dues exceeded the mandatory seizure of an agency fee to which it was entitled. In other words, a deduction in excess of 84.6% of union dues constitutes a voluntary contribution by a non-union member. Nothing, of course, prohibits a non-member from making such a voluntary contribution, but a voluntary contribution cannot be presumed. In the Court's view, before an employee's salary can be diminished on the basis of a voluntary contribution, the employee must, in deference to his First Amendment interests, affirmatively consent to the deduction.

The Court's rejection of the union's claim that it is entitled to retain an amount equal to 100% of union dues leaves undisturbed the "traditional rule that the proper remedy for an unconstitutional fee collection is not a refund of the total fee, but "the refund … of a portion of the exacted funds in the same proportion that union [nonchargeable] expenditures bear to total union expenditures." *Lowary*, at 433. Mindful of the objectives announced in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)[9] to protect non-union employees from having to subsidize ideological activity, the Court finds it an appropriate deterrent to award restitution as to only the concededly nonchargeable portion (15.4%) collected from non-union members who did not affirmatively object to the 100% deduction.[10]

---

**7.** The union is, of course, free to engage in the solicitation of voluntary contribution from non-members for an amount equivalent to the full union dues. But, to respect plaintiffs' constitutional rights, the union's deduction of the entire amount of dues, an act treating the plaintiffs as if they were union members but without granting them the privileges of membership, must be predicated on a showing of the non-members' affirmative written consent to such collection.

**8.** Although the *Cumero* opinion is instructive, it is well established that federal courts are not bound by decisions of a state supreme court as to the effect of the Federal Constitution. *See State of Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Smithfield Concerned Citizens v. Town of Smithfield*, 719 F.Supp. 75, 80 (D.R.I.1989) ("a state court ruling on a federal question is not binding in a federal court").

**9.** *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) (the union could not, consistently with the Constitution, collect from dissenting employees any sums for the support of ideological causes not germane to its duties as collective-bargaining agent).

**10.** Defendants object to including in the class non-members who have not objected to the fees. However, the gravamen of the complaint contests the absence of procedural safeguards mandated by *Hudson*, rather than the appropriate amount of agency fees actually charged by UTLA, a dispute better resolved in arbitration. Because the failure to disclose an adequate audit verifying the agency fee calculation is an issue common to all non-members of the union, the named plaintiffs have standing to raise this issue on behalf of all members of the plaintiff

**4. *Validity of LAUSD Indemnification Clause.***

■ Finally, the Court denies plaintiffs' request for declaratory judgment that the indemnification clause in the collective bargaining agreement between the UTLA and the LAUSD is null and void on the ground that it is violative of the non-union members' rights guaranteed under *Hudson*. The mere existence of an indemnity clause whereby UTLA agrees to hold harmless LAUSD for adverse actions arising from the union's enforcement of the agency fee arrangement is not facially or, as applied to the facts of this case, unconstitutional. Indeed, many of the post-*Hudson* cases involved indemnity provisions, none of which have been declared invalid. Moreover, the constitutional infirmity that this Court has found—the failure to adequately verify the financial expenditures—is wholly unconnected to the indemnity clause that plaintiffs seek to invalidate.

Plaintiffs rely on *Stamford Board of Education v. Stamford Education Association*, 697 F.2d 70 (2d Cir.1982). In *Stamford*, a "hold harmless" clause in a collective bargaining agreement was found to violate federal civil rights policy on the ground that enforcement of the clause would militate against deterring discrimination. *Stamford* is distinguishable from the LAUSD "hold-harmless" clause. *Stamford* did not hold that indemnity agreements *per se* violate the constitutional rights of non-union members. Plaintiffs' injury arises from a violation of a particular aspect of their *Hudson* rights, specifically the audit's failure to verify the expenditure breakdown. The mere presence of the indemnification clause does not bear on this injury. The constitutional infirmity at issue involves inadequate audit statements, not the agency fee agreement itself. In *Stamford*, by contrast, the court found the collective bargaining agreement on its face discriminated on the basis of sex with respect to the salaries of teachers by pro-

viding lower pay for females than males in comparable positions. No such facial defect permeates the LAUSD–UTLA indemnification clause.

### III. Conclusion

For the foregoing reasons, IT IS ORDERED that this action shall be maintained by the plaintiffs as a class action under Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2). The class consists of employees of the LAUSD as of February 7, 1990 who are within the collective bargaining unit represented by UTLA, but who are not currently members of the union.

IT IS FURTHER ORDERED that the UTLA defendants shall give revised notice correcting the specific *Hudson* audit deficiencies adjudicated in this lawsuit to all members of the plaintiff class by completing a first class mailing within forty-five (45) days from the entry of this Order, which notice shall reinstitute the period for timely challenges to the agency fee calculation. In the event the defendants fail to disseminate a revised notice within forty-five (45) days, all escrowed funds deducted from the non-union members' paychecks shall forthwith be returned to the class members. Pending completion of the revised notice procedure, all funds collected from the members of the class shall be maintained by the union in a segregated interest-bearing escrow account.

IT IS FURTHER ORDERED that defendants make restitution in an amount equal to the non-chargeable portion (15.4% of agency fees), with accrued interest, collected from each class member, including those class members who did not affirmatively object to the 100% deduction. Restitution shall be made within ninety (90) days from the entry of this Order to all non-union members, except those who affirmatively consent to deduction in excess of the union calculated agency fee.[11]

IT IS FURTHER ORDERED that defendants are permanently enjoined from col-

---

class, that is, including non-union members who did not object.

**11.** The union is given 90 (ninety) days in order to permit it, if it desires, to solicit contributions

equal to full union dues and obtain affirmative written consents for deductions in excess of 84.6% of union dues.

lecting more than the agency fee from any non-union member, unless the employee affirmatively consents to deduction of full union dues.

Plaintiffs' counsel is directed to lodge within 10 (ten) days of its entry a proposed form of judgment consistent with this Order.

IT IS SO ORDERED.