Carol WEAVER, et al., Plaintiffs,

v.

UNIVERSITY OF CINCINNATI, et al., Defendants.

No. C–1–90–591.

United States District Court, S.D. Ohio, W.D.

May 31, 1991.

---

J. Michael Dobyns, Wilmington, Ohio, W. James Young, Springfield, Va., for plaintiffs.

Eric Holzapfel, Donald Mooney, Jr., Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon cross-motions for summary judgment filed by plaintiffs Carol Weaver et al., and by defendants Joseph L. Steger and Jill Parris (the "University Defendants") and District 925/SEIU ("District 925").[1] (Doc. Nos. 32, 34, 38, 40, 41, 42). Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court does hereby set forth its Findings of Fact, Opinion, and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiffs are, or have been, employees of the University of Cincinnati at all times relevant hereto.

2. Defendant Joseph L. Steger is the President of the University of Cincinnati, a public employer within the meaning of Ohio Revised Code Annotated § 4117.01(B). Defendant Jill Parris is the interim Vice–President for Human Resources and Human Relations at the University of Cincinnati, a state institution of higher learning within the meaning of Ohio Revised Code Annotated § 4117.01(B).

3. Defendant District 925 is an unincorporated association, organized as a labor union, formed and existing under the laws of the State of Ohio.

4. The University Defendants entered into a collective bargaining agreement with District 925 effective on or about October 1, 1989 which governed the terms and conditions of plaintiffs' employment. The collective bargaining agreement contains an agency shop clause.

5. The collective bargaining agreement additionally contains a "Hold Harmless" or indemnification provision, providing that:

The union agrees to save the University harmless from any legal action growing out of these check-off deductions that may be instituted by an employee involved therein before a court, or any other body asserting of having jurisdiction, against the University as well as reasonable costs and expenses involved in defense of any such action.

6. On May 3, 1990, District 925 mailed to all the nonmembers at its University of Cincinnati chapter, a notification describing the agency shop fee requirement negotiated as part of the collective bargaining agreement with the University of Cincinnati.

7. Thereafter, District 925 received by mail or hand delivery 157 dissents and 55 challenges from nonmember employees objecting to the agency fee requirement.

8. Beginning in June of 1990, the University of Cincinnati began deducting 90% of union dues from the paychecks of the 157 dissenters. Also, in accordance with the challenged procedure, District 925 placed into an escrow account the agency shop fees deducted from the paychecks of the 55 challengers.

9. All plaintiffs in this action are challengers.

10. After the exhaustion of District 925's internal appeal procedures as provided for in the notice of May 3, 1990, an arbitration was requested and commenced under the American Arbitration Association's ("the AAA") Rules for the Impartial Determination of Agency Fees. An arbitrator was unilaterally selected by the AAA and an arbitration hearing was conducted in August of 1990.

11. The plaintiffs filed this action before the arbitration hearing occurred.

12. The arbitrator concluded that the fair share fee calculation by District 925 was proper.

13. The arbitrator did find three defects in District 925's notification procedures: (i)

---

1. In a previous Order, this Court held that the University of Cincinnati, an arm of the State of Ohio, is immune from suit.

it was improper to require notification of a dissent or challenge by certified mail; (ii) it was improper for District 925 to require the exhaustion of an internal appeal procedure before challengers could exercise their right to determination before an impartial hearing officer; and (iii) the use of the word "rebate" in one of the financial statements provided by District 925 may have confused potential challengers as to the nature of the expenses itemized on that line.

14. The arbitrator ordered a re-notification of the nonmembers of District 925. The re-notification, dated November 20, 1990, contains the following relevant elements: (i) a full copy of an audit conducted by an independent auditor selected by District 925; (ii) an elimination of any requirement of certified mailings; and (iii) an elimination of an internal appeal procedure.

15. Under the new notification procedure, those who had filed dissents or challenges pursuant to the May 3, 1990 notice continued to be treated as dissenters or challengers for purposes of the 1990 agency shop fee charge.

16. Any nonmembers who did not file a dissent or challenge pursuant to the May 3, 1990 notice were granted a new opportunity to file a dissent or challenge under the re-notification of November 20, 1990.

17. The re-notification also provides that any nonmembers who filed challenges or dissents pursuant to the re-notification procedure, but who paid full union dues from June of 1990, are entitled to a rebate from District 925 of 10% of the dues paid since that date.

## OPINION

The summary judgment procedure under Rule 56 of the Federal Rules of Civil Procedure is designed to secure a just, speedy and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Rule 56(c) permits the court to grant summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any" demonstrate the absence of any genuine issues of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. The parties agree that no genuine issues of material fact exist as to the issues raised in this action.

### I.

#### *Claims of the Parties*

Plaintiffs brought this action seeking: (i) injunctive relief against all agency shop fee seizures; (ii) complete restitution of all illegally seized fees; (iii) a declaratory judgment holding the indemnification provision contained in the collective bargaining agreement as void; and (iv) punitive damages to be assessed against District 925. Plaintiffs challenge the collection of agency fees by the University defendants and District 925 on seven grounds. The allegedly actionable defects are: (i) plaintiffs' non-receipt of audited financial disclosure of District 925's chargeable versus non-chargeable allocations; (ii) District 925's failure to provide any financial disclosure of affiliated state and national labor organizations to whom it makes payments; (iii) District 925's procedures for objecting to or challenging the calculation of the agency fee are unconstitutionally burdensome; (iv) the definitions and methods of calculation used by District 925 are vague and constitutionally overbroad; (v) District 925 improperly charges nonmembers differing amounts of agency fees, based solely upon a percentage of the nonmembers salary; (vi) District 925 improperly charges nonmembers, who do not affirmatively dissent, 100% of union dues; and (vii) the indemnification clause contained in the collective bargaining agreement is void as against public policy.

District 925 and the University Defendants generally contest the validity of plaintiffs' claims. In addition, District 925 contends that the arbitrator's decision, coupled with its subsequent re-notification of nonmembers on November 20, 1990, effectively moot claims one through four as previously listed. Plaintiffs counter that the arbitrator's decision and the subsequent re-notification are wholly irrelevant

to the vindication of their alleged constitutional deprivations arising from the defects in the notice of May 3, 1990. They ask this Court to adjudicate the issues before it as if the arbitration hearing and the subsequent re-notification had never occurred.

## II.

### *Arbitration and a Constitutional Challenge to the Agency Fee Agreement*

■ The United States Supreme Court in *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) stated that a collective bargaining agreement containing an agency fee clause must contain a provision providing for "a reasonably prompt decision by an impartial decisionmaker." *Id.* at 307, 106 S.Ct. at 1076. The Supreme Court went on to clarify this requirement:

> We think that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker, so long as the arbitrator's selection did not represent the union's unrestricted choice.... The arbitrator's decision would not receive preclusive effect in any subsequent § 1983 action.

*Id.* at 308 n. 21, 106 S.Ct. at 1077 n. 21. Therefore, it is clear that an arbitrator's decision does not moot a party's § 1983 claims premised upon an allegedly unconstitutional agency fee collection procedure. The *Hudson* Court does advise that an arbitration is a legitimate first step in the evaluation of the validity of an agency fee plan. A district court may examine and ultimately ratify determinations made by a properly selected arbitrator upon a finding that an arbitrator's decision was correct.[2]

■ First, plaintiffs allege that District 925's procedures for objecting to and challenging the union's calculation of the fair share fee are unconstitutionally burdensome. The arbitrator correctly concluded that the notice of May 3, 1990 was constitutionally deficient in two respects:

(i) the notice's requirement that a challenger exhaust the union's internal appeal process before being permitted access to an impartial decisionmaker; and (ii) the notice's certified mailing requirement to effectuate a challenge or dissent. The mandate to exhaust the union's internal appeal process clearly violates the *Hudson* requirement of prompt access to an impartial decisionmaker. *Hudson*, 475 U.S. at 307, 106 S.Ct. at 1076. Likewise, a certified mailing requirement, which serves no legitimate purpose and works to complicate and frustrate an employee's attempt to raise an objection, is invalid:

> Procedures must ... not be framed so as to discourage the exercise of First Amendment rights by intimidation or the imposition of unrealistic and excessively complex procedural requirements.

*Tierney v. City of Toledo*, 824 F.2d 1497, 1503 (6th Cir.1987) ("*Tierney I*"); *see also International Union, UAW v. N.L.R.B.*, 865 F.2d 791, 797 (6th Cir.1989). In light of the arbitrator's decision requiring District 925 to remedy these constitutional defects and District 925's compliance in the re-notification of November 20, 1990, the issue of burdensome objection procedures has been satisfactorily resolved.

■ Second, plaintiffs challenge the May 3, 1990 notice's lack of an audited financial disclosure of District 925's chargeable versus nonchargeable allocations. *Hudson* declares that a union must disclose "the major categories of expenses, as well as verification by an independent auditor." *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. Neither *Hudson* nor its progeny mandate that a notice must include a full financial report prepared by an independent auditor. Even so, the inclusion of the independent audit in the November 20, 1990 notice affords plaintiffs the relief they request. Further action on this claim is not warranted.

---

**2.** Any contention by plaintiffs that the selection of an AAA arbitrator was unfair or biased is unfounded. The United States Court of Appeals for the Sixth Circuit explicitly held that such a selection meets the mandate of impartiality enunciated in Hudson. See *Damiano v. Matish*, 830 F.2d 1363, 1371 (6th Cir.1987).

■ Third, plaintiffs allege that District 925's failure to provide any financial disclosure of affiliated state and national labor organizations to which it makes payments is actionable as well. District 925 in the notices of May 3, 1990 and November 20, 1990 summarily set forth those amounts which were paid by the union to affiliated state and national labor organizations. Neither notice indicates how these amounts were determined by these affiliates, what funds were chargeable versus those which were nonchargeable, whether there was a verification by an independent auditor of the calculations made by the affiliates, or exactly what constitutes District 925's group of affiliates. The arbitrator did find that the notices were not deficient despite these omissions.

The failure of District 925 to present more information concerning the union's payments to affiliated labor organizations violates the demands of *Hudson* and its progeny. In *Lowary v. Lexington Local Bd. of Educ.*, 903 F.2d 422 (6th Cir.1990), the United States Court of Appeals for the Sixth Circuit commented upon the Union's disclosure duty:

> Requiring nonmembers to contribute to the cost of collective bargaining includes a substantial interference with their First Amendment right of freedom of association. Although it may be somewhat burdensome on the unions, full disclosure of financial information is a minimal requirement in exchange for this interference. *Hudson* and a due regard for First Amendment values leads to this conclusion.

*Id.* at 432. To fully protect nonmembers' First Amendment rights, "adequate financial disclosure 'must include an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and non-agreement purposes.'" *Tierney v. City of Toledo*, 917 F.2d 927, 933 (6th

Cir.1990) ("*Tierney II*") *quoting Tierney* I, 824 F.2d at 1503.

The summary disclosure of those payments made by District 925 to affiliated state and national labor organizations is inadequate. In both notices, District 925 failed to identify the affiliates which receive funds and failed to provide audited financial accounting of the affiliates' use of these funds. The dictates of the First Amendment and *Hudson* require such disclosures.

■ Fourth, plaintiffs contend that the definitions and methods of calculations used by District 925 are vague and constitutionally overbroad. Whether the definitions and calculations used by District 925 are valid is a chargeability and not a notice issue. As stated in *Tierney* II:

> Ensuring adequate disclosure to enable a non-member to object, however, is materially different from determining whether particular expenditures are chargeable or whether the calculations and methodology therefore are acceptable.... These issues are for the Arbitrator in the first instance once a non-member has objected to the propriety of a particular agency fee.

*Tierney* II, 917 F.2d at 935. An arbitrator's decision on the propriety of the chargeability definitions and calculations may be given deferential treatment by a district court. *See Lowary*, 903 F.2d at 433. Absent a clear chargeability violation overlooked by an arbitrator, a district court and all parties involved would gain little by a full blown evidentiary hearing on this issue. In the present action, the arbitrator thoroughly examined the extensive financial documentation buttressing the calculations and accepted District 925's chargeability determination. In addition, the plaintiffs have failed to point to any inaccuracies in the calculations. Therefore, this Court shall defer to the arbitrator's decision on this claim.[3]

3. Two of plaintiffs' claims may be summarily disposed of. First, plaintiffs claim that District 925's charging of nonmembers differing amounts of agency fees based upon a percentage of the nonmember's salary constitutes a

constitutional deprivation. This is a tortured attempt to equate Hudson's call for payment of a "proportionate share" by nonmembers to a payment of an "equal share" by nonmembers. The assessment of dues based upon a percent-

## III.

### The Indemnification Clause

■ Plaintiffs allege that the "Hold Harmless" provision of the collective bargaining agreement between District 925 and the University Defendants abrogates the University Defendants' duty to ensure that the agency fee collection procedure is constitutional. The collection of Union agency fees from a nonmember violates that person's First Amendment rights. This impingement is permitted so as to protect unions from the financial destruction caused by "free riders." This policy reflects a clear understanding of the contributions unions make to American workers and to American society. *See Abood v. Detroit Board of Education,* 431 U.S. 209, 222–23, 97 S.Ct. 1782, 1792–93, 52 L.Ed.2d 261 (1977).

■ Because the policy of allowing unions to collect agency fees works a constitutional deprivation upon nonmembers, agency fee plans must be carefully structured and monitored by all parties involved. The United States Court of Appeals for the Sixth Circuit stated in *Tierney* I that the employer owes a duty to its nonunion employees to ensure that agency fee collection procedures do not deprive them of their rights under the First and Fourteenth Amendments. *Id.,* 824 F.2d at 1505[4] In *Cramer v. Matish,* 924 F.2d 1057 (table) (6th Cir.1990), an unpublished decision, the Sixth Circuit Court of Appeals specifically held that indemnification clauses in collective bargaining agreements which "purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy." *Id.* at 8 *citing Stamford Bd. of Educ. v. Stamford Educ. Ass'n,* 697 F.2d 70, 73–5 (2d Cir.1982).

The University Defendants, through their indemnification agreement with District 925, have effectively destroyed the only realistic motivation an employer has to ensure an agency fee plan is constructed and administered correctly. By agreeing to indemnify the University Defendants for any constitutional deficiencies in their agency fee plan, District 925 enables them to escape liability for any action instituted by an employee challenging the validity of the agency fee plan.[5] The University defendants have attempted to contract away their duty to protect the First Amendment rights of the nonmember employees. This they may not do.

Nonmembers, who themselves have been forced to accept an impingement of their First Amendment rights, are entitled to the protection of a vigilant employer who is legally bound to ensure the constitutionality of an agency fee plan. The "Hold Harmless" provision of the collective bargaining agreement violates this policy concern. Accordingly, this Court finds the indemnification clause to be void as against public policy.

## CONCLUSIONS OF LAW

1. The constitutional deficiencies in the notice of May 3, 1990 for dissent and challenge by nonmembers, namely the certified

---

age of earnings is both reasonable and constitutional. See *Bagnall v. Airline Pilots Ass'n, Int'l,* 626 F.2d 336, 339 (4th Cir.1980).

Second, plaintiffs allege that the union erred in charging nonmembers, who do not affirmatively dissent, one hundred percent of union dues. This contention clearly overlooks a nonmember's obligation to make his objection known. *Hudson,* 475 U.S. at 306 n. 16, 106 S.Ct. at 1075 n. 16. Because the notices of May 3, 1990 and November 20, 1990 contained sufficient information to trigger the nonmember's obligation to affirmatively object, this claim is without merit.

**4.** The District Court for the Central District of California summarized this position by stating:

"Under Hudson, a public employer, as well as the public employees union, has a responsibility to see to it that adequate procedures are provided which minimize the impingement of nonmembers constitutional rights." *Mitchell v. Los Angeles Unified School Dist.,* 739 F.Supp. 511, 516 (C.D.Cal.1990).

**5.** The University Defendants make the argument that the availability of an Ohio Administrative remedy for employees sufficiently protects the nonmembers' rights. Such an argument completely misses the point. Protection of nonmembers' rights by a "third party" does not acquit the University Defendants of their duty to safeguard against constitutional defects in the agency fee plan.

mailing requirement and the exhaustion of internal union remedies before the granting of access to an impartial decisionmaker, have been cured by the subsequent notice of November 20, 1990. *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 307–08 n. 21, 106 S.Ct. 1066, 1076–77 n. 21.

2. Plaintiffs' non-receipt of audited financial disclosure of District 925's chargeable versus nonchargeable allocations has been remedied by the inclusion of an independent financial audit in the notice of November 20, 1990.

3. District 925's failure to identify those affiliates to whom it makes payments, and its failure to provide audited financial disclosure of the affiliates' use of these funds, is a violation of the *Hudson* requirements. *Lowary v. Lexington Local Bd. of Educ.,* 903 F.2d 422 (6th Cir.1990), *Tierney* II, 917 F.2d 927 (6th Cir.1990).

4. The arbitrator correctly determined that the chargeability determination made by District 925 is valid. *Lowary v. Lexington Local Bd. of Educ.,* 903 F.2d 422, 433; *Tierney* II, 917 F.2d 927, 935.

 5. The collection of agency fee dues by District 925 based upon a percentage of the nonmember's salary is permissible. *Bagnall v. Airline Pilots Ass'n, Int'l,* 626 F.2d 336, 339 (4th Cir.1980).

 6. Nonmembers who do not affirmatively dissent from or challenge the validity of the agency fee may be charged full union dues. *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 306 n. 16, 106 S.Ct. 1066, 1075 n. 16, 89 L.Ed.2d 232 (1986).

7. The indemnification clause contained in the collective bargaining agreement between District 925 and the University Defendants is void as against public policy. *Tierney* I, 824 F.2d 1497, 1505 (6th Cir. 1987); *Mitchell v. Los Angeles Unified School Dist.,* 739 F.Supp. 511, 516 (C.D.Cal. 1990).

It is hereby ORDERED that judgment is entered in plaintiffs' favor on claim two alleging inadequate disclosure concerning payments made by District 925 to union affiliates. Accordingly, defendants are directed to disclose within 60 days of the date of this Order the identity of affiliated state and national labor organizations receiving payments from District 925 and an audited financial accounting of those payments. Judgment is also entered in plaintiffs' favor on claim seven charging the invalidity of the indemnification clause in the collective bargaining agreement between District 925 and the University Defendants. The indemnification clause is hereby stricken from the collective bargaining agreement.

It is further ORDERED that defendants' motion for judgment in their favor on all other claims brought by plaintiffs is welltaken and is hereby GRANTED.

IT IS SO ORDERED.