Robin Gansley MITCHELL; Arthur L. Benveniste; Walter J. Borden; Conrad J. Chavez, et al., Plaintiffs–Appellees,

v.

LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant,

and

United Teachers–Los Angeles, Defendant–Appellant.

No. 90–56180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided April 29, 1992.

Leo Geffner, Taylor, Roth, Bush & Geffner, Burbank, Cal., for defendants-appellants.

Milton L. Chappell, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiffs-appellees.

Before SCHROEDER, LEAVY, and FERNANDEZ, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiffs-appellees in this case are employees of the defendant Los Angeles Unified School District. They are represented by the defendant and appellant union, United Teachers—Los Angeles. That union represents approximately 35,000 teachers in the Los Angeles School District under an agency shop agreement duly certified pursuant to the California Educational Employment Relations Act, Cal.Gov't Code §§ 3540–3549.3 (West 1980 & Supp. 1992). The agreement contains an agency fee provision which authorizes a payroll deduction on behalf of the union for all employees, regardless of union membership or nonmembership, in an amount not to exceed normal union membership dues and assessments. It is that agency fee provision which is at issue in this appeal.

The named plaintiffs in this case are nonunion members of the bargaining unit. They filed this action against the school district and the union challenging various aspects of the operation of the agency fee provision. The district court's opinions in the case are reported at 739 F.Supp. 511 (C.D.Cal.1990) ("*Mitchell I*") and 744 F.Supp. 938 (C.D.Cal.1990) ("*Mitchell II*", the subject of this appeal). On appeal, the facts are not disputed. The issue is the legal sufficiency under the First Amendment of the procedures followed by the union to prevent plaintiffs as nonunion members from being forced to pay for the union's political activities which plaintiffs do not support.

These are the procedures that were followed. In November of 1989, a greater than two-to-one majority of the affected employees voted in favor of a mandatory agency fee arrangement. The election was conducted and the results were certified by the California Public Employment Relations Board. The union then sent a notice to all nonmembers in the bargaining unit. That notice advised the nonmembers of their obligation to pay an agency fee equal to the full amount of union dues unless the nonmember informed the union in writing within 30 days that the nonmember objected to paying for non-representational union activities. The notice further informed the nonmembers that the cost of the union's representational activities accounted for 84.6 percent of the full agency fee and that those nonmembers objecting to the full agency fee would be obligated to pay only a reduced agency fee based solely on the cost of the union's representational activities. Approximately a week after the first notice, the union sent all nonmembers a second notice containing the same information. A majority of the nonmembers, including the named plaintiffs, did not respond to either notice.

After the payroll deductions began, the named plaintiffs filed this action seeking to represent a class of all nonunion employees in the bargaining unit. They contended that to ensure adequate protection of their First Amendment rights, the union could lawfully deduct the full amount of dues from their paychecks only if they affirmatively consented to contribute to the activities of the union not related to representation. The district court agreed, certified the class, and entered an injunction enjoining the union from collecting any more than the reduced agency fee from nonunion employees "unless the employee affirmatively consents to deduction of full union dues." *Mitchell II*, 744 F.Supp. at 945. The union timely appealed. This court or-

dered the school district's appeal dismissed because it was untimely.

In its appeal, the union readily acknowledges that when a union collects fees under a union or agency shop agreement authorized by state law, there may be employees who object to the union's political activities. The Supreme Court has held that under the First Amendment, employees must be given an opportunity to make such objections known and the fees these dissenting employees pay must be reduced by the amount the union spends on activities not necessary to its role as collective bargaining representative. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 240, 97 S.Ct. 1782, 1802, 52 L.Ed.2d 261 (1977). The union contends that the district court erred, however, in holding that the First Amendment requires more than an opportunity to object but additionally requires affirmative consent to the payment of full union dues before the full dues may be deducted. In other words, the union contends that dissenting nonunion employees need be given only an opportunity to "opt out" of full dues payment. It argues that the Constitution does not mandate a system under which nonmembers pay full union dues only if they "opt in."

The union's position is supported by a long line of Supreme Court cases beginning with *International Ass'n of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). The issue in *Street* was whether a union "receiving an employee's money should be free, despite that employee's objection, to spend his money for political causes which he opposes." 367 U.S. at 749, 81 S.Ct. at 1790. The Court concluded that it should not. Avoiding constitutional issues, the Court construed the provisions of the Railway Labor Act to prevent a union "over an employee's objection" from using compulsory union dues to support political causes the employee does not favor. *Id.* at 770, 81 S.Ct. at 1800. Dealing with whether the employee has any obligation to make an objection known, the Court said in oft-repeated language that "dissent is not presumed—it must affirmatively be made known to the union by the dissenting employee." *Id.* at 774, 81

S.Ct. at 1803. "The union receiving money exacted from an employee under a union shop agreement should not in fairness be subjected to sanctions in favor of an employee who makes no complaint of the use of his money for such activities." *Id.*

Following the precedent set in *Street*, the Supreme Court in *Brotherhood of Ry. and S.S. Clerks v. Allen*, 373 U.S. 113, 118–19, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963), reaffirmed the requirement that, under the RLA, an employee who objects to the union's use of his deducted funds for activities unrelated to a union's representational role must make that objection known to the union. In addition, the Court stated that "[n]o respondent who does not in the course of the further proceedings in this case prove that he objects to such use [of agency fees by the union for non-representational purposes] will be entitled to relief. This is not and cannot be a class action." *Id.* at 119, 83 S.Ct. at 1162. The meaning of this statement is clear: under the statutory scheme created by the RLA, employees who fail to object individually to the amount of the compulsory union dues have no right to receive relief from the payment of those dues. *Accord Seay v. McDonnell Douglas Corp.*, 427 F.2d 996, 1004 (9th Cir.1970) (on remand in action against union under the RLA, district court should include as plaintiffs only those employees who raised an objection to the use of agency fees for political purposes).

In *Abood*, the Supreme Court considered the contention that a union shop arrangement affecting public employees violated the constitutional rights of those employees who objected to "public-sector unions as such or to various union activities financed by the compulsory service fees." 431 U.S. at 211, 97 S.Ct. at 1787. The Court had to rule first on the constitutional validity of compelling employees to support a particular collective bargaining representative. Citing *Railway Employees' Dep't v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) and *Street*, the Court ruled that such a requirement "is constitutionally justified by the legislative assessment of the important contribution of the

union shop to the system of labor relations established by Congress," *id.* at 222, 97 S.Ct. at 1793, and concluded that the same justifications presumptively supported the establishment of the Michigan agency shop law. *Id.* at 225, 97 S.Ct. at 1794. The Court then had to determine whether the state could constitutionally permit "the use of nonunion members' fees for purposes other than collective bargaining." *Id.* at 232, 97 S.Ct. at 1798. The Court ruled that the union could use the funds for such purposes provided that the money came from employees who did not object to the expenditures. Thus the Court held that the Constitution required the same right to object to political expenditures previously articulated in the context of the Railway Labor Act in *Street* and *Allen.* The Court rejected the notion, advanced by the plaintiffs in this case, that the only funds from nonunion members that the union could constitutionally use for political or ideological causes were funds that the nonunion members volunteered to pay. "[T]he Constitution requires only that such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who were not coerced into doing so against their will by the threat of loss of governmental employment." *Id.* at 235–36, 97 S.Ct. at 1800.

In *Ellis v. Brotherhood of Ry., Airline and S.S. Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), and *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), the Supreme Court addressed the procedures that a union should follow in order to safeguard the First Amendment rights of dissenting nonunion employees. The Supreme Court's premise continued to be that the state could constitutionally authorize the union to collect full dues provided those who objected to political or ideological expenditures would be permitted to pay an appropriately reduced share of the agency fee. The objective under the First Amendment was to "prevent[ ] compulsory

subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." 475 U.S. at 302, 106 S.Ct. at 1074 (quoting *Abood,* 431 U.S. at 237, 97 S.Ct. at 1800).[1]

The most recent Supreme Court decision in the area of agency fees is *Lehnert v. Ferris Faculty Ass'n,* —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), another case arising under Michigan's agency shop statute, and dealing with the nature of activities that could or could not be supported through the funds of objecting employees. Again, the premise remained that employees had the burden of objecting. *See id.* 111 S.Ct. at 1959–60.

There is, accordingly, no support for the plaintiffs' position in this case that affirmative consent to deduction of full fees is required in order to protect their First Amendment rights. The Supreme Court has repeatedly held that nonunion members' rights are adequately protected when they are given the opportunity to object to such deductions and to pay a fair share fee to support the union's representation costs. Indeed, this court has expressly articulated the plaintiffs' burden in *Grunwald v. San Bernardino City Unified Sch. Dist.,* 917 F.2d 1223 (9th Cir.1990). In determining the adequacy of nonunion employees' notice to the union of their objection to the full fee, we said: "The Supreme Court has clearly held that the nonunion employee has the burden of raising an objection. 'The nonmember's "burden" is simply the obligation to make his objection known.' " *Id.* at 1229 (citation omitted) (quoting *Hudson,* 475 U.S. at 306 n. 16, 106 S.Ct. at 1075 n. 16).

The California Supreme Court reached the same conclusion in a case which decided an issue similar to that raised here but arising directly under the California Educational Employment Relations Act (EERA). *Cumero v. Public Employment Relations Bd.,* 49 Cal.3d 575, 581, 262 Cal.

---

1. Plaintiffs in this case and in the district court objected to a number of features of the union's collection procedures under *Hudson,* but on ap-

peal, neither party has asked us to decide any of these issues arising under *Hudson.*

Rptr. 46, 48, 778 P.2d 174, 176 (1989). In *Cumero,* the California Supreme Court ruled that:

> The only limit *expressly* imposed by the EERA on the amount of the nonmember fee the union may collect is that the fee may not exceed the union's standard initiation fee, periodic dues, and general assessments. (§ 3540.1, subd. (i)(2).) That limitation implies a general prohibition against putting the service fees to any use to which the union could not properly put the funds voluntarily paid by its members.
>
> In addition to rights stemming from that general constraint, each nonmember has a right to prevent the use of his or her service fee for purposes beyond the union's representational obligations. Since ... that additional right is an aspect of the right of an employee to refuse to participate in a union's activities (§ 3543), it must be affirmatively asserted or else it is waived.

*Id.* at 590, 262 Cal.Rptr. at 54–55, 778 P.2d at 182–83 (emphasis in original).

Plaintiffs have endeavored to distinguish their case from the United States Supreme Court decisions, particularly from *Abood,* which most closely addresses their situation and most clearly rejects their position. Plaintiffs point out that their case is the first to involve a class consisting entirely of nonmembers. They contend that this characteristic of the class requires us to conclude that these plaintiffs must be assumed to disagree with the union's political activities. It is true that the class in *Abood* consisted of both union and nonunion employees. The Court, however, was dealing with an issue of individual constitutional rights and held that all plaintiffs, not just those who were union members, were required to voice their objection to payment of the full agency fee.

The district court in granting the plaintiffs relief analogized to the waiver of constitutional rights in the criminal context to conclude that the plaintiffs had not expressly waived their right to object and were thus effectively "compelled" to pay more than their fair share. *Mitchell II,*

744 F.Supp. at 941–42. In the context of a police confrontation, the Supreme Court has stated that there must be "an intentional relinquishment or abandonment of a known right or privilege" for there to be a valid consent to search under the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854 (1973). *See also Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (cautioning courts not to "presume acquiescence in the loss of fundamental rights" in connection with the waiver of right to counsel). The case before us, however, reveals none of the coercive elements so palpable in a police confrontation. The Supreme Court has never suggested that employees who are offered the opportunity to object to the union fee deduction and do not do so act under any compulsion. There is thus no basis, either factual or legal, for the district court's conclusion that plaintiffs were "compelled" to acquiesce, in violation of their First Amendment rights.

The closest civil analogy to this case may be the "opt out" procedure utilized in class action lawsuits. *See* Fed.R.Civ.P. 23(c)(2). This rule provides that each class member is bound by the result of the litigation unless the member individually objects to being in the class. Ironically, it is this very device that plaintiffs utilize to represent the class of all nonunion members in whose name they advance the principal contentions in this appeal. In its most recent discussion of class action "opt out" procedures, the Supreme Court considered whether protections beyond the opportunity to opt out were constitutionally required to safeguard the rights of a class plaintiff who was out-of-state. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The Court concluded that the Constitution does not require more than an opt out procedure to protect the "somewhat rare species of class member" who is unwilling to execute and return an opt out form but who does have something amounting to a protectable interest in not being a member of the class. 472 U.S. at 813, 105 S.Ct. at 2975. By the same token, the burdensome "opt in" require-

ment sought by the class in this case would unduly impede the union in order to protect "the relatively rare species" of employee who is unwilling to respond to the union's notifications but nevertheless has serious disagreements with the union's support of its political and ideological causes.

The procedures followed by the union to give plaintiffs the opportunity to object to the full agency fee complied with the applicable standard to ensure protection of their First Amendment rights. The district court's injunction mandating affirmative consent to the full deduction is RE-VERSED.