71 P.3d 244 (2003)
STATE of Washington ex rel. WASHINGTON STATE PUBLIC DISCLOSURE COMMISSION, Respondent,
v.
WASHINGTON EDUCATION ASSOCIATION, Appellant.
No. 28264-0-II.
Court of Appeals of Washington, Division 2.
June 24, 2003.
*245 Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S., Seattle, WA, Aimee Strand Iverson, WA Education Association, Federal Way, WA, Harriet Kay Strasberg, Olympia, WA, for Appellant.
David Thomas Wendel, Assistant Attorney General, Linda Anne Dalton, Olympia, WA, for Respondent.
James D. Oswald, Law Offices of James D. Oswald, Seattle, WA, Donald E Clocksin, Olympia, WA, Russell Clayton Brooks, Pacific Legal Foundation, Bellevue, WA, for Amicus Curiae.
BRIDGEWATER, J.
The State sued the Washington Education Association (WEA) alleging that it had violated RCW 42.17.760 by using non-union employees' (nonmembers) agency fees to make political expenditures without their affirmative authorization. Based on U.S. Supreme Court caselaw that (1) mandates a balancing between members' and nonmembers' First Amendment free speech and association rights, and (2) approves of a procedure that requires nonmembers to exercise their rights by objecting or "opting out," we hold that RCW 42.17.760 is unconstitutional because, by requiring an "opt in" procedure, it presumes that nonmembers object to the use of their fees for political purposes. Accordingly, we reverse.
WEA is a labor organization and the exclusive bargaining representative for some 70,000 Washington public educational employees. As bargaining representative, WEA has a statutory duty to represent every employee in the bargaining unit, members and nonmembers alike.[1] The collective bargaining *246 agreement between WEA and the State includes an agency shop provision that requires all nonmembers to pay service fees; nonmembers are employees who are in the bargaining unit but who choose not to join WEA. Less than five percent of Washington public educational employees choose to be nonmembers.
Forcing nonmembers to contribute money to a labor union amounts to compelled association with the union and impacts[2] their First Amendment free speech and association rights.[3] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."[4] Nevertheless, the State's interest in facilitating collective bargaining and preventing free riders justifies the compelled association.[5] Free riders are "employees in the bargaining unit on whose behalf the union [is] obliged to perform its statutory functions, but who refus[e] to contribute to the cost thereof."[6]
Members pay dues to WEA; nonmembers pay agency fees.[7] But under RCW 41.59.060(2) and RCW 41.59.100, agency fees are equivalent to member dues.[8]
A union's expenditures fall into two categories: (1) chargeable expenditures, those related to collective bargaining and representational activities; and (2) non-chargeable expenditures, those unrelated to collective bargaining, including political and ideological expenditures. Because nonmembers pay fees that are equivalent to member dues, they are, in effect, contributing funds for non-chargeable and political expenditures. This also impacts nonmembers' constitutional rights because nonmembers are compelled to make contributions for political purposes.[9]
Under WEA's current practices, nonmembers who object to paying fees for the union's non-chargeable expenditures (objectors) are required to pay only the chargeable portion of the fee, the fair share fee. WEA annually calculates the fair share fee.
Each fall, WEA sends letters to nonmembers notifying them of their right to object to paying fees for non-chargeable expenditures and to challenge WEA's calculation of the fair share fee. The letters include deadlines and detailed financial information regarding WEA's expenditures so that nonmembers can decide whether to object. When nonmembers object, an arbitrator determines the fair share fee. Pending the outcome of the arbitration, WEA escrows any fees that are reasonably in dispute. WEA refunds to objectors the non-chargeable portion of the fee.
Nonmembers who do not object to paying fees for non-chargeable expenditures (non-objectors) do not receive refunds. Instead, their fees are transferred from escrow to WEA's general account and commingled with member dues. WEA makes its non-chargeable expenditures from that account.
In August 2000, the Evergreen Freedom Foundation (EFF) filed a complaint with the Public Disclosure Commission (PDC) under RCW 42.17.400(4). EFF alleged that WEA was violating RCW 42.17.760 by using agency fees to make political expenditures without nonmembers' affirmative authorization. RCW 42.17.760 provides:

*247 A labor organization may not use agency shop fees paid by an individual who is not a member of the organization to make contributions or expenditures to influence an election or to operate a political committee, unless affirmatively authorized by the individual.[10]
To avoid another lawsuit with EFF,[11] WEA entered into a stipulation with the PDC acknowledging that it violated RCW 42.17.760 during its 1999-2000 fiscal year. The PDC referred the matter to the Attorney General's Office for prosecution, believing that its administrative penalty was insufficient to address the stipulated violations. A larger penalty is available in superior court.[12]
The State sued WEA, alleging that it violated RCW 42.17.760 during the previous five years, 1996 to 2000.[13] Both parties moved for summary judgment.
The superior court granted the State's motion for partial summary judgment, ruling that RCW 42.17.760 requires affirmative authorization from nonmembers before a union may either collect or use agency fees for political expenditures. The court also denied WEA's motion for summary judgment, ruling that RCW 42.17.760 is constitutional, that it did not unconstitutionally amend RCW 41.59.100, and that WEA's fee collection procedures did not satisfy RCW 42.17.760's affirmative authorization requirement. The superior court reserved for trial the issue of whether WEA had "used" agency fees for political expenditures.[14]
At trial, several accountants offered differing opinions on whether WEA had used agency fees to make political expenditures. The parties' jointly retained expert, Michael Gocke, testified that if there were sufficient member dues to pay for all non-chargeable expenses, then agency fees could not have been used to pay for any non-chargeable or political expenditures. Laird S. Vanetta, WEA's expert, opined that WEA had not used agency fees for political expenditures because there were sufficient additional revenues (other than dues or fees) to pay for all of WEA's political expenditures. The State's expert, Jerry Lee Baliban, opined that WEA had used agency fees for political expenditures because once WEA commingled fees with other funds in its general account, every expenditure from that account became tainted with a proportionate share of agency fees.
In July 2001, the superior court issued a letter opinion finding that WEA had violated RCW 42.17.760. The court wrote: "WEA violates RCW 42.17.760 when it collects agency fees and then spends them for prohibited purposes in ratio to the total agency fees and dues collected without affirmative authorization."[15] In its findings of fact, the court explained that "WEA used agency fees, from each [nonmember] who did not receive any refund of part of their fees, for [political] expenditures."[16] The court adopted the "proportionality" theory that the State's expert presented, finding that "when agency fees were commingled with other funds in the general treasury, expenditure of any general treasury monies to influence an election or support a political committee results in use of a proportionate share of agency fees for such purposes."[17] In sum, the trial court found that WEA violated RCW 42.17.760 when it (1) failed to refund the non-chargeable portion of agency fees to non-objectors; (2) commingled the un-refunded fees with other revenue in its general fund; and (3) later made political expenditures from the general fund.
The superior court assessed a $200,000 penalty against WEA and then doubled the *248 penalty under RCW 42.17.400(5), finding that WEA had intentionally violated RCW 42.17.760.[18] The court based its finding of intent on evidence that WEA knew what the statute required but violated it anyway.[19] For example, WEA had previously acknowledged that the statute "makes all [non-member]s into objectors."[20]
Finally, the superior court entered a permanent injunction and awarded costs and fees to the State. The injunction ordered WEA to implement certain measures and prohibited it from collecting agency fees that are equivalent to member dues.

I. RCW 42.17.760
WEA argues that the superior court's interpretation of RCW 42.17.760 is unconstitutional because it impinges on political speech without any sufficiently compelling government interest. We presume that a statute is constitutional, and the party challenging it must prove that it is unconstitutional beyond a reasonable doubt.[21]
A. AGENCY FEES AND THE FIRST AMENDMENT
The only authority that a union has to compel nonmembers to pay agency fees is statutory. Statutes that compel nonmembers to pay fees to a union are known as agency shop laws. Nonmembers have challenged these laws numerous times as an infringement on their First Amendment rights. RCW 41.59.060(2) and 41.59.100 compel Washington public educational employees to contribute money to WEA.
The Constitution requires that unions finance their political and ideological expenditures (non-representational activities) with revenues from employees who do not object to advancing those ideas.[22] Thus, nonmembers who object to the union's nonrepresentational activities (objectors) have a constitutional right to pay only the chargeable portion of the agency fee, i.e., the fair share fee. In other words, by objecting to the union's non-representational activities, a nonmember asserts his or her First Amendment rights and cannot be compelled to pay more than his or her fair share of the union's chargeable expenditures.
In a 1961 decision, International Ass'n of Machinists v. Street,[23] the U.S. Supreme Court addressed whether a union "receiving an employee's money should be free, despite that employee's objection, to spend his money for political causes which he opposes."[24] The Court held that a union could not spend an objecting employee's money in such a manner. Balancing union members' constitutional rights against objectors' rights, the Court stated:
[T]he majority [union members] also has an interest stating its views without being silenced by the dissenters [objectors]. To attain the appropriate reconciliation between majority and dissenting interests in the area of political expression, we think the courts ... should select remedies which protect both interests to the maximum extent possible without undue impingement of one on the other.[[25]]
*249 Dealing with whether employees had any obligation to voice an objection, the Court stated:
[D]issent is not to be presumedit must affirmatively be made known to the union by the dissenting employee. The union receiving money exacted from an employee under a union-shop agreement should not in fairness be subjected to sanctions in favor of an employee who makes no complaint of the use of his money for such activities.[[26]]
Thus, the Court enunciated that the First Amendment free speech right was preserved by its exercise. Employees who do not want a union to use their money for political expenditures must make their objection known to the union.
In Abood,[27] the Court had to determine whether the states could constitutionally permit "the use of [nonmember]s' fees for purposes other than collective bargaining."[28] The Court held that unions could use non-objectors' fees for such purposes.[29] Justice Powell, in a concurring opinion joined by Justice Burger (the Chief Justice) and Justice Blackmun, noted that nonmembers must object to prevent the union from using their fees for political expenditures:
The Court today holds that compelling an employee to finance a union's "ideological activities unrelated to collective bargaining" violates the First Amendment regardless of any asserted governmental justification. But the Court also decides that compelling an employee to finance any union activity that may be "related" in some way to collective bargaining is permissible under the First Amendment because such compulsion is "relevant or appropriate" to asserted governmental interests. And the Court places the burden of litigation on the individual. In order to vindicate his First Amendment rights in a union shop, the individual employee apparently must declare his opposition to the union and initiate a proceeding to determine what part of the union's budget has been allocated to activities that are both "ideological" and "unrelated to collective bargaining."[[30]]
Thus, in 1977, the Court again reiterated both the balance and the remedy, i.e., expression of objection, in a union or agency shop situation.
In 1986, the Court again dealt with the situation under examination in Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson.[31] There, the Court cited Abood and twice stated that nonmembers must object to prevent a union from using their fees for political expenditures.
In Abood, we reiterated that the nonunion employee has the burden of raising an objection, but that the union retains the burden of proof.
. . . .
... The nonunion employee, whose First Amendment rights are affected by the agency shop itself and who bears the burden of objecting, is entitled to have his objections addressed in an expeditious, fair, and objective manner.
. . . .
... We reiterate that ... the nonunion employee has the burden of objection.[[32]]
In sum, nonmembers who do not want the union to use their fees for non-chargeable expenditures must make their objection *250 known to the union.[33] After a nonmember objects, the union must prove that its fair share fee was correctly calculated and does not include non-chargeable expenditures.[34]
B. CONSTITUTIONALLY REQUIRED AGENCY FEE COLLECTION PROCEDURES
Because the payment of fees affects nonmembers' First Amendment rights, the procedures used to collect fees must "be carefully tailored to minimize the infringement" on those rights.[35] Therefore, unions cannot exact fees from nonmembers "without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining."[36] We address this collection procedure only to demonstrate its thoughtful construction by the Supreme Court in connection with the balancing and the remedy that they selected to resolve controversies.
In Hudson,[37] the Supreme Court laid out three requirements for the collection of agency fees: unions must (1) provide an "adequate explanation of the basis for the fee" (the Hudson notice); (2) give the objector "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker"; and (3) have "an escrow for the amounts reasonably in dispute while such challenges are pending."[38] The Hudson notice ensures that nonmembers have sufficient information to decide whether to challenge the union's calculation of the fair share fee.[39]
WEA appears to follow Hudson's requirements. Agency fees remain in escrow until either: (1) the nonmember does not object to the union's collection of the funds, in which case the funds are released to the union; (2) the nonmember objects and accepts the union's fair share fee calculation, in which case he or she receives a refund in that amount; or (3) the nonmember objects and challenges the union's calculation, in which case an impartial decision maker decides the proper fee and the nonmember receives a refund in that amount.
C. RCW 42.17.760 CREATES AN "OPT IN" SITUATION
RCW 42.17.760 relieves nonmembers of their burden of objection. Its affirmative authorization requirement creates a presumption that all nonmembers object to the use of their fees for political expenditures. Thus, RCW 42.17.760 is an "opt-in" procedurenonmembers must give their authorization before the union may use their fees on political expenditures. The statute does not follow the Court's carefully crafted and balanced approach.
Although WEA's fee collection system might satisfy the procedures laid down in *251 Hudson, that alone does not satisfy the affirmative authorization requirement in RCW 42.17.760. Indeed, nonmembers who fail to object do not affirmatively authorize the union to use their fees for political expenditures.[40]
D. THE NINTH AND SIXTH CIRCUITS HAVE REJECTED OPT-IN REMEDIES
Two federal circuit courts have rejected opt-in remedies as unduly burdensome on unions. In Mitchell,[41] the Ninth Circuit reversed a district court that had imposed an opt-in requirement on a union's agency fee collection system. There, nonmembers argued that the union could collect fees that were equivalent to member dues only if they affirmatively consented to contribute to the union's non-chargeable expenditures.[42] Although the nonmembers had failed to object, the district court enjoined the union from collecting any more than the fair share fee from nonmembers "`unless the [nonmember] affirmatively consents to deduction of full union dues.'"[43]
The Ninth Circuit rejected the nonmembers' argument and reversed the district court. It relied on a "long line" of Supreme Court cases holding that nonmembers' rights are "adequately protected" when they are given the opportunity to object to paying fees that are equivalent to member dues.[44] The court noted that in Lehnert v. Ferris Faculty Ass'n,[45] the Supreme Court's most recent decision in the area of agency fees, the premise remained that employees had the burden of objecting. The Ninth Circuit then proceeded to expressly identify the remedy that they had previously acknowledged:
There is, accordingly, no support for the [nonmember]s' position in this case that affirmative consent to deduction of full fees is required in order to protect their First Amendment rights. The Supreme Court has repeatedly held that nonunion members' rights are adequately protected when they are given the opportunity to object to such deductions and to pay a fair share fee to support the union's representation costs. Indeed, this court has expressly articulated the [nonmember]s' burden in Grunwald v. San Bernardino City Unified Sch. Dist., 917 F.2d 1223 (9th Cir.1990). In determining the adequacy of nonunion employees' notice to the union of their objection to the full fee, we said: "The Supreme Court has clearly held that the nonunion employee has the burden of raising an objection. `The nonmember's "burden" is simply the obligation to make his objection known.'" Id. at 1229 (citation omitted) (quoting Hudson, 475 U.S. at 306 n. 16, 106 S.Ct. at 1075 n. 16).[[46]]
The Ninth Circuit then addressed the nonmembers' argument that their right not to pay for non-chargeable expenditures was analogous to a criminal defendant's constitutional rights and thus required their intentional relinquishment of the right. The court rejected the analogy:
The case before us ... reveals none of the coercive elements so palpable in a police confrontation. The Supreme Court has never suggested that employees who are offered the opportunity to object to the union fee deduction and do not do so act under any compulsion. There is thus no basis, either factual or legal, for the district court's conclusion that plaintiffs were *252 "compelled" to acquiesce, in violation of their First Amendment rights.[[47]]
Instead, the court found a closer analogy in the "opt-out" procedure for class action lawsuits. An "opt-in" procedure, the court found, "would unduly impede the union in order to protect the `relatively rare species' of employee who is unwilling to respond to the union's notifications but nevertheless has serious disagreements with the union's support of its political and ideological causes."[48]
In Weaver,[49] the Sixth Circuit held that nonmembers' silence after sufficient opportunity to object from paying for non-chargeable expenses could indicate acquiescence. The court relied on the line of cases requiring employees to object to the use of their funds for non-chargeable expenditures and the Ninth Circuit's decision in Mitchell.[50]
[T]he [nonmember]s' argument [that silence cannot be construed as waiver of the right to object from paying for non-chargeable expenditures] must fall because it seeks to shift the balance of interests underlying all of the Supreme Court's pronouncements on the subject of agency shop fees. An "opt-in" procedure would greatly burden unions while offering only a modicum of control to nonunion employees whose procedural rights have already been safeguarded by Hudson.[51]
RCW 42.17.760's affirmative authorization requirement, like the opt-in procedure imposed by the district court in Mitchell, would unduly require a union to protect nonmembers who disagree with a union's political expenditures but are unwilling to voice their objections. The procedures imposed on unions by federal law fully protect nonmembers' First Amendment rights. Further restrictions, such as an opt-in procedure, upset the balance between nonmembers' rights and the rights of the union and the majority.[52]
Furthermore, in Allen,[53] the Court acknowledged a union's right to spend non-objectors' fees on political expenditures: "no decree would be proper which appeared likely to infringe on the unions' right to expend uniform exactions under the union-shop agreement in support of activities germane to collective bargaining and, as well, to expend nondissenters' such exactions in support of political activities."[54] The affirmative authorization requirement in RCW 42.17.760 also ignores a union's right to use non-objectors' agency fees on political expenditures.
RCW 42.17.760's affirmative authorization requirement unduly burdens unions. RCW 42.17.760 is unconstitutional in light of the U.S. Supreme Court caselaw and the reasoning articulated by the Ninth Circuit. Because all other decisions of the trial court hinged on the constitutionality of RCW 42.17.760, we do not address them. We reverse the trial court's judgment, including the injunction,[55] attorney fees, and penalties.

II. Attorney Fees
WEA requests its attorney fees and costs at trial and on appeal.[56] WEA has now *253 prevailed. Accordingly, we remand to the trial court with directions to determine (1) whether WEA should receive the costs and attorney fees that it reasonably incurred at the trial level; (2) the amount of the same, if any; and (3) the amount of costs and attorney fees that WEA has reasonably incurred on this appeal.
Reversed.
I concur: MORGAN, P.J.
HUNT, C.J.
I respectfully concur in part and dissent in part. I agree with the majority that under RCW 42.17.760, the union may collect agency fees, including those it ultimately intends to use for political purposes. But I disagree with the majority's conclusion that the statute is unconstitutional in prohibiting the political use of fees collected from nonmembers without their prior affirmative authorization.
I also concur in the majority's reversal of penalties assessed against the WEA. On the record before us, it appears that the WEA was operating under a good faith belief that its actions were lawful so long as it refunded agency fees to nonmembers upon request and used for political purposes only those nonmember fees for which employees had not expressly requested rebates.

I. CONSTITUTIONALITY OF STATUTE
RCW 42.17.760, entitled, "Agency shop fees as contributions," provides:
A labor organization may not use agency shop fees paid by an individual who is not a member of the organization to make contributions or expenditures to influence an election or to operate a political committee, unless affirmatively authorized by the individual.
(Emphasis added.) The cases the majority cites do not hold that the Constitution bars a statutory provision, such as RCW 42.17.760, which requires a nonmember employee's affirmative authorization before a union can use his or her agency fee for political purposes.
For example, at pages 248 and 249 of their opinion, the majority cites two Railway Labor Act cases, International Ass'n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), and Brotherhood of Railway and Steamship Clerks v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), for the proposition that an "opt in" provision is not constitutionally required; with this proposition I agree. But these cases do not support the converse, advanced by the majority here, that an "opt in" provision such as Washington's is constitutionally barred.
Similarly, in a First Amendment case also cited by the majority, Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Supreme Court held that a public teachers' union may not use a nonmember's agency fees to underwrite the union's political activity over the nonmember's objection. In so holding, the Court sought to craft a fee-collection procedure that would prevent
compulsory subsidization of ideological activity by employees who object thereto [1] without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities and [2] without allowing "union members who do wish part of their dues to be used for political purposes ... [to be] silenced by the dissenters." Abood, 431 U.S. at 237-38, 97 S.Ct. 1782 (citation omitted). In crafting this remedy, the Court sought "guidance" from Street and Allen, reciting that "dissent is not to be presumed." Abood, 431 U.S. at 237-38, 97 S.Ct. 1782. Nonetheless, Abood does not expand this clause to hold that that an "opt in" procedure is constitutionally impermissible, as the majority here infers.[57]
*254 Ellis v. Brotherhood of Railway, Airline & Steamship Clerks, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), supports this limited reading of Abood as stopping short of finding a constitutional requirement that the burden of dissent rests on the objecting employee. The Court noted that Street, Allen, and Abood "did not, nor did they purport to, pass upon the statutory or constitutional adequacy of the suggested remedies."[58]Ellis, 466 U.S. at 443, 104 S.Ct. 1883.
Similarly, in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), the Court addressed whether a specific union procedure adequately protected a dissenting employee's right to "prevent the Union[] [from] spending a part of [his] required service fees to contribute to political [activity] ... unrelated to its duties as exclusive bargaining representative." Hudson, 475 U.S. at 302, 106 S.Ct. 1066 (citations and quotations omitted). The Court repeatedly stated that under that specified union procedure, the employee bore the burden of objecting. Hudson, 475 U.S. at 306-07, 309, 106 S.Ct. 1066. Again, however, the Court did not hold that the Constitution mandates that such burden rest on the employee.[59]
In Mitchell v. Los Angeles Unified School District, 963 F.2d 258 (9th Cir.1992), the Ninth Circuit Court of Appeals addressed the constitutional sufficiency of a school district union's "opt out" procedure for nonmember employees. The employees argued that an "opt in" procedure was constitutionally required, to which the Court responded that "the Constitution does not mandate a system under which nonmembers pay full union dues only if they `opt in.'" Mitchell, 963 F.2d at 260 (emphasis added). The Ninth Circuit read the Supreme Court opinions mentioned above as holding "that nonunion members' rights are adequately protected when they are given the opportunity to object to such deductions and to pay a fair share fee to support the union's representation costs." Mitchell, 963 F.2d at 261. Similar to these Supreme Court opinions, however, in approving an "opt out" procedure, the Mitchell Court did not hold that the Constitution requires an "opt out" procedure in lieu of an "opt in" procedure like the one at issue here.
In short, the cases that the majority cites simply uphold "opt out" procedures as constitutional. None, however, hold that the Constitution requires an "opt out" procedure or that the burden of dissent must be on the objecting employee. Further, none of these cases hold that a statutory "opt in" procedure, such as the one in RCW 42.17.760, is constitutionally infirm, contrary to the majority's finding here that an "opt out" procedure is constitutionally mandated.

II. STATUTORY LIMITATIONS
Washington's statutory scheme allows unions to collect fees and dues from union members and equivalent agency fees from non-union members. RCW 41.59.100; RCW 41.59.060(2). Although employees have the right to refrain from joining a union, they may nonetheless be required to pay "a fee to any employee organization under an agency shop agreement." 41.59.060(1). But the union cannot spend such non-members' fees for political purposes without such employees' affirmative authorization. RCW 42.17.760. Rather, non-authorizing nonmembers are entitled to rebates of that portion of their agency fees that would have gone for union political expenses. RCW 42.17.760.
Here, the parties' jointly retained expert, Michael Gocke, testified that member dues alone were sufficient to cover all WEA political expenses. But the practical effect of such a scheme would be to shift a disproportionate share of the collective bargaining expenses onto nonmembers' agency fees: In essence, the non-members would pay a portion of the members' share of the collective bargaining expenses, thus freeing up a larger share of the members' dues for political expenses. *255 Such a scheme appears to contradict the Legislature's goals of (1) equal allocation of collective bargaining expenses between members and non-members, (2) equal allocation of political expenses between members and affirmatively assenting non-members, and (3) retention of the political expense portion of agency fees to non-assenting nonmembers. See RCW 41.59.060(1); RCW 41.59.100; RCW 42.17.760.
Even taking the evidence here in the light most favorable by the WEA, the record supports the trial court's findings that
WEA violates RCW 42.17.760 when it collects agency fees and then spends them for prohibited purposes in ratio to the total agency fees and dues collected without affirmative authorization.

Clerk's Papers (CP) at 361.
WEA used agency fees, from each [nonmember] who did not receive any refund of part of their fees, for [political] expenditures.
CP at 371.
Accordingly, I would affirm the trial court's conclusion of law that
[w]hen agency fees were commingled with other funds in the general treasury, expenditure of any general treasury monies to influence an election or support a political committee results in use of a proportionate share of agency fees for such purposes.
CP at 373. I would also uphold the trial court's injunction prohibiting the WEA from collecting agency fees, equivalent to member dues, from nonmembers who do not first affirmatively authorize a portion for political expenditures as the Legislature has prescribed in RCW 42.17.760.

III. PENALTIES
I would affirm the trial court's finding that the WEA contravened the plain, and constitutional, language of RCW 42.17.760 when (1) it knowingly collected nonmember fees, in part for political expenditures, without those nonmembers' prior affirmative authorization; and (2) refunded such fees only when a nonmember specifically requested a rebate. Therefore, I dissent from the majority's contrary holding on this point.
But I concur in the majority's reversal of the penalties assessed against the WEA. The record shows that the WEA had a good faith basis for relying on its interpretation of the statute and for requiring nonmembers to request rebates following collection of agency fees. Clearly, the WEA read and interpreted the Supreme Court cases in a manner consistent with my learned colleagues' reading as rendering the "opt in" collection method unconstitutional. In spite of my dissention from the majority's legal conclusion as to the constitutionality of the statute, I do not find the penalties against WEA warranted and, therefore, I concur in the majority's reversal of the penalties assessed below.
NOTES
[1] RCW 41.59.090.
[2] See Abood v. Detroit Bd. of Educ., 431 U.S. 209, 222, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) ("To compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests.").
[3] See Roberts v. United States Jaycees, 468 U.S. 609, 622-23, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).
[4] U.S. CONST. amend. I.
[5] Abood, 431 U.S. at 220-22, 97 S.Ct. 1782.
[6] Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees, 466 U.S. 435, 447, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).
[7] See RCW 41.59.060(2); RCW 41.59.100.
[8] Leer v. Wash. Educ. Ass'n, 172 F.R.D. 439, 442 (W.D.Wash.1997).
[9] See Abood, 431 U.S. at 234, 234 n. 31, 97 S.Ct. 1782.
[10] RCW 42.17.760 (emphasis added).
[11] See, e.g., State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 140 Wash.2d 615, 999 P.2d 602 (2000); State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 111 Wash.App. 586, 49 P.3d 894 (2002).
[12] See RCW 42.17.390; RCW 42.17.400(5).
[13] The Public Disclosure Act, Chapter 42.17 RCW, has a five-year statute of limitations. RCW 42.17.410.
[14] Clerk's Papers (CP) at 350.
[15] CP at 361 (footnote omitted).
[16] CP at 371.
[17] CP at 373.
[18] Each violation of the Fair Campaign Practices Act, Chapter 42.17 RCW, is punishable by a penalty up to $10,000. RCW 42.17.390(3).
[19] The court found that "WEA was aware of RCW 42.17.760 and that [it] foreclosed the use of agency fees for [political expenditures] without the affirmative authorization of the fee payer." CP at 372.
[20] CP at 208 (WEA's April 1998 reply memorandum supporting motion to dismiss claim brought by EFF); accord CP at 86 (April 2000 WEA memorandum in support of summary judgment).
[21] Belas v. Kiga, 135 Wash.2d 913, 920, 959 P.2d 1037 (1998).
[22] See Ellis, 466 U.S. at 448-55, 104 S.Ct. 1883; Abood, 431 U.S. at 235-36, 97 S.Ct. 1782; Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. Allen, 373 U.S. 113, 121-22, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); Int'l Ass'n of Machinists v. Street, 367 U.S. 740, 770, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (a union must not support its political activities with an objecting employee's mandatory fees.)
[23] Street, 367 U.S. 740, 81 S.Ct. 1784.
[24] Street, 367 U.S. at 749, 81 S.Ct. 1784.
[25] Street, 367 U.S. at 773, 81 S.Ct. 1784 (emphasis added).
[26] Street, 367 U.S. at 774, 81 S.Ct. 1784.
[27] Abood, 431 U.S. 209, 97 S.Ct. 1782.
[28] Abood, 431 U.S. at 232, 97 S.Ct. 1782.
[29] See Abood, 431 U.S. at 235-36, 97 S.Ct. 1782 ("[T]he Constitution requires only that [a union's political] expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment.").
[30] Abood, 431 U.S. at 254, 97 S.Ct. 1782 (Powell, J., concurring) (citations omitted; emphasis added).
[31] Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).
[32] Hudson, 475 U.S. at 306, 307, 309, 106 S.Ct. 1066 (emphasis added).
[33] See Street, 367 U.S. at 774, 81 S.Ct. 1784 ("Any remedies, however, would properly be granted only to employees who have made known to the union officials that they do not desire their funds to be used for political causes to which they object.... [O]nly those who have identified themselves as opposed to political uses of their funds are entitled to relief.") (emphasis added); Allen, 373 U.S. at 119, 83 S.Ct. 1158 ("No respondent who does not in the course of the further proceedings in this case prove that he objects to such use [of agency fees by the union for nonrepresentational activities] will be entitled to relief.") (emphasis added); Abood, 431 U.S. at 235-36, 97 S.Ct. 1782 ("[T]he Constitution requires only that [nonrepresentational activities] be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by threat of loss of governmental employment.") (emphasis added); Hudson, 475 U.S. at 302, 106 S.Ct. 1066 (The objective under the First Amendment "`must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities.'" (quoting Abood, 431 U.S. at 237, 97 S.Ct. 1782) (emphasis added))).
[34] Hudson, 475 U.S. at 306, 106 S.Ct. 1066.
[35] Hudson, 475 U.S. at 303, 106 S.Ct. 1066.
[36] Abood, 431 U.S. at 244, 97 S.Ct. 1782 (Stevens, J., concurring).
[37] Hudson, 475 U.S. 292, 106 S.Ct. 1066.
[38] Hudson, 475 U.S. at 310, 106 S.Ct. 1066.
[39] See Hudson, 475 U.S. at 306, 106 S.Ct. 1066 ("Basic considerations of fairness, as well as concern for the First Amendment rights at stake... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee.").
[40] See BLACK'S LAW DICTIONARY 59-60 (7th ed.1999) (defining "affirmative" as: "1. That supports the existence of certain facts 2. That involves or requires effort .").
[41] Mitchell v. Los Angeles Unified Sch. Dist., 963 F.2d 258 (9th Cir.), cert. denied, 506 U.S. 940, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992).
[42] Mitchell, 963 F.2d at 259.
[43] Mitchell, 963 F.2d at 259 (quoting Mitchell v. Los Angeles Unified Sch. Dist., 744 F.Supp. 938, 945 (C.D.Cal.1990)).
[44] Mitchell, 963 F.2d at 260, 261, 260-62 (citing Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991); Ellis, 466 U.S. 435, 104 S.Ct. 1883; Abood, 431 U.S. 209, 97 S.Ct. 1782; Allen, 373 U.S. 113, 83 S.Ct. 1158; Street, 367 U.S. 740, 81 S.Ct. 1784).
[45] Lehnert, 500 U.S. 507, 111 S.Ct. 1950.
[46] Mitchell, 963 F.2d at 261.
[47] Mitchell, 963 F.2d at 262.
[48] Mitchell, 963 F.2d at 263 (emphasis added).
[49] Weaver v. Univ. of Cincinnati, 970 F.2d 1523 (6th Cir.1992), cert. denied, 507 U.S. 917, 113 S.Ct. 1274, 122 L.Ed.2d 668 (1993).
[50] Weaver, 970 F.2d at 1532 (citing Hudson, 475 U.S. 292, 106 S.Ct. 1066; Abood, 431 U.S. 209, 97 S.Ct. 1782; Allen, 373 U.S. 113, 83 S.Ct. 1158; Street, 367 U.S. 740, 81 S.Ct. 1784; Ry. Employees' Dep't v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956)).
[51] Weaver, 970 F.2d at 1533 (emphasis added).
[52] See Abood, 431 U.S. at 238, 97 S.Ct. 1782 ("[T]hose union members who do wish part of their dues to be used for political purposes have a right to associate to that end `without being silenced by the dissenters.'" (quoting Street, 367 U.S. at 772-73, 81 S.Ct. 1784)); see also supra note 33.
[53] Allen, 373 U.S. 113, 83 S.Ct. 1158.
[54] Allen, 373 U.S. at 122, 83 S.Ct. 1158 (emphasis added).
[55] The trial court's injunction ignores that RCW 41.59.060(2) grants a union the right to collect fees equivalent to member dues.
[56] See RCW 42.17.400(5) ("If the defendant prevails, he shall be awarded all costs of trial, and may be awarded a reasonable attorney's fee to be fixed by the court to be paid by the state of Washington."); RAP 18.1 (attorney fees are allowed on appeal only if authorized by applicable law); Ur-Rahman v. Changchun Dev., Ltd., 84 Wash.App. 569, 576, 928 P.2d 1149 (1997) (statute authorizing fees to the prevailing party at trial authorizes fees on appeal).
[57] Moreover, Justice Stevens left the door open for alternative remedies. Abood, 431 U.S. at 244, 97 S.Ct. 1782 (Stevens, J. concurring). Only Justice Powell, as the majority here notes at page 249, reads the majority opinion in Abood as placing the burden of dissent on the objecting employee. Abood, 431 U.S. at 254-55, 97 S.Ct. 1782 (Powell, J. concurring). In contrast, the majority in Abood does not go so far as to hold that the Constitution requires the burden of dissent to be placed on the objecting employee.
[58] Although in Abood, the Court did mention placement of the burden of dissent in the context of its discussion on remedies, Abood, 431 U.S. at 237-38, 97 S.Ct. 1782, in Ellis, it neither mentioned nor addressed the burden of dissent.
[59] Nor did the Hudson Court question the constitutionality of placing such a burden on the dissenting employee.